1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Timothy L. O'Mara (Bar No. 212731)
   505 Montgomery Street, Suite 2000
3  San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
4  Facsimile:  (415) 395-8095
   Email:   Dan.Wall@lw.com
5  Email:   Tim.OMara@lw.com

6
   Attorneys for Defendant
7  ELECTRONIC ARTS INC.

8
                    UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12  GEOFFREY PECOVER and JEFFREY        CASE NO. C 08-02820 VRW
    LAWRENCE, on Behalf of Themselves and
13  All Others Similarly Situated,       **DEFENDANT ELECTRONIC ARTS INC.'S
                                         MOTION TO DISMISS CLASS ACTION
14                                       COMPLAINT**

15                    Plaintiffs,

16         v.                            Date:      December 4, 2008
                                         Time:      2:30 P.M.
17  ELECTRONIC ARTS INC., a Delaware     Place:     Courtroom 6, 17th Floor
    Corporation                          Judge:     The Honorable Vaughn R. Walker
18
19                    Defendant.

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1

## <u>TABLE OF CONTENTS</u>

2

<u>PAGE</u>

3      I.      Introduction ................................................................................................ 1

4      II.     Statement Of Issues To Be Decided ......................................................... 2

5      III.    Legal Standard .......................................................................................... 3

6      IV.     Plaintiffs' Antitrust Allegations Fail To State A Claim............................ 4

7              A.     The Material Allegations ................................................................ 4

8              B.     Plaintiffs' Section 2 Claim Is Barred by the *Illinois Brick* Doctrine ................... 5

9              C.     Plaintiffs' Monopolization Claim Fails Because the Alleged Harm
                      Arises from Lawful Exclusive Licenses of Intellectual Property
10                    Rights ............................................................................................ 6

11             D.     Plaintiffs Fail to State a Plausible Claim that EA Has Enhanced Its
                      Market Power Through the Unlawful Acquisition of Allegedly
12                    Related IP Rights .......................................................................... 9

13             E.     Plaintiffs' Alleged Violation of the California Cartwright Act Fails
                      to Plead Facts Sufficient to State a Plausible Conspiracy Claim
14                    under *Twombly*.............................................................................. 11

15             F.     Plaintiffs' State Antitrust Claims Fail – Substantively and/or for
                      Lack of Standing .......................................................................... 13
16
       V.      Plaintiffs' Claims Under The State Consumer Protection Statutes Must Be
17             Dismissed .................................................................................................. 15

18             A.     Plaintiffs Fail to Allege the Necessary Elements of a Claim Under
                      the Consumer Protection Statutes of California and the District of
19                    Columbia....................................................................................... 16

20             B.     Plaintiffs Lack Standing to Assert Consumer Protection Claims
                      under the Laws of the Eighteen States Where Neither Resides.......... 18
21
       VI.     Plaintiffs' Attempt To Bring A Nationwide Class Action Under California
22             Law Fails The Supreme Court's *Shutts* Test.......................................... 20

23     VII.    Plaintiffs' Fourth Cause Of Action For Unjust Enrichment Is Improper
               And Must Be Dismissed ........................................................................... 23
24
       VIII.   Conclusion ................................................................................................ 24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

1

## TABLE OF AUTHORITIES

2

3

### CASES

4

*Agular v. Atlantic Richfield Co.*,
    25 Cal. 4th 826 (Cal. 2001) ................................................................. 17

5

*American Needle, Inc., v. New Orleans Louisiana Saints*,
    496 F. Supp. 2d 941(N.D. Ill. 2007) ...................................................... 7

6

7

*American Needle, Inc., v. NFL*,
    No. 07-4006, 2008 U.S. App. LEXIS 17553, 2008 WL 3822782
    (7th Cir. Aug. 18, 2008) ........................................... 2, 6, 7, 8, 11

8

9

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................... 3, 12

10

*Biljac Assoc. v. First Interstate Bank*,
    218 Cal. App. 3d 1410 (1990) .............................................................. 12

11

12

*Chamberlain v. Am. Honda Fin. Corp.*,
    931 A.2d 1018 (D.C. 2007) .................................................................. 17

13

*Chicago Prof. Sports Ltd.  v. NBA*,
    95 F.3d 593 (7th Cir. 1996) ................................................................... 7

14

15

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................. 4

16

*Cook Inc. v. Boston Sci. Corp.*,
    333 F.3d 737 (7th Cir. 2003) ................................................................. 8

17

18

*Davis v. Pac. Bell*,
    204 F. Supp. 2d 1236 (N.D. Cal. 2002) .............................................. 12

19

*Dist. Cablevision Ltd. P'shp v. Bassin*,
    828 A.2d 714 (D.C. 2003) ................................................................... 17

20

*Fleer Corp. v. Topps Chewing Gum*,
    658 F.2d 139 (3d Cir. 1981) ................................................ 7, 8, 10, 11

21

*Freeman v. San Diego Association of Realtors*,
    77 Cal. App. 4th 171 (Cal. Ct. App. 1999) ......................................... 11

22

23

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ............................................................... 8

24

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ........................................................... 14

25

26

*Hoyte v. Yum! Brands, Inc.*,
    489 F. Supp. 2d 24 (D.D.C. 2007) ...................................................... 17

27

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .......................................................................... 5, 20

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

*In re Ditropan XL Antitrust Litig.,*
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ....................................................... 14, 18

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007) .................................................................................... 4

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ......................................................*passim*

*In re Netflix Antitrust Litigation,*
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ............................................................ 3, 11

*In re Syntex Corp. Sec. Litig.,*
    95 F.3d 922 (9th Cir. 1996) ................................................................................... 3

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .............................................................. 18

*Ingels v. Westwood One Broadcasting Services, Inc.,*
    129 Cal. App. 4th 1050 (2005) ............................................................................ 16

*International Norcent Technology v. Koninklijke Philips Electronics N.V.,*
    No. 07-00043, 2007 U.S. Dist. LEXIS 89946, 2007 WL 4976364 (C.D. Cal.
    Oct. 29, 2007) ....................................................................................................... 4

*Jack Russell Terrier Network v. American Kennel Club, Inc.,*
    407 F.3d 1027 (9th Cir. 2005) ............................................................................ 12

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) .............................................................................. 4

*Kobe v. Dempsey,*
    198 F.2d 416 (10th Cir. 1952) ............................................................................ 11

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (Cal. 2003) .............................................................................. 23

*Krantz v. BT Visual Images,*
    89 Cal. App. 4th 164 (Cal. Ct. App. 2001) ........................................................ 17

*Lawlor v. National Screen Service Corp.,*
    270 F.2d 146 (3d Cir. 1959) ......................................................................... 10, 11

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (Cal. Ct. App. 2004) ...................................................... 23

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.,*
    No. 08-00080, 2008 U.S. Dist. LEXIS 47428, 2008 WL 2437739 (D. Haw.
    June 17, 2008) ....................................................................................................... 4

*Melchior v. New Line Productions, Inc.,*
    106 Cal. App. 4th 779 (Cal. Ct. App. 2003) ...................................................... 23

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n,*
    524 F.3d 726 (6th Cir. 2008) ................................................................................ 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ........................................................................ 3

*North Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983) ........................................................................ 3

*Paddock Publications, Inc. v. Chicago Tribune Company*,
   103 F.3d 42 (7th Cir. 1997) ........................................................................... 9

*Person v. Google, Inc.*,
   No. 06-7297, 2007 U.S. Dist. LEXIS 47920, 2007 WL 1831111 (N.D. Cal.
   June 25, 2007)................................................................................................ 4

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................................................................................... 20

*Redwood Theaters, Inc. v. Festival Enterprise*, Inc.,
   908 F.2d 477 (9th Cir. 1990) ...................................................................... 12

*Riggs Nat'l Bank of Washington D.C. v. D.C.*,
   581 A.2d 1229 (D.C. 1990) .......................................................................... 17

*Royal Printing Co. v. Kimberly-Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ......................................................................... 5

*Scripps Clinic v. Sup. Ct.*,
   108 Cal. App. 4th 917 (Cal. Ct. App. 2003) .............................................. 16

*Levi Case Co. v. ATS Prods.*,
   788 F. Supp. 428 (N.D. Cal. 1992) ............................................................ 12

*St. Paul v. FMC Corp.*,
   No. 89-0466, 1990 U.S. Dist. LEXIS 18142, 1990 WL 265171 (D. Minn. Feb.
   26, 1990) ....................................................................................................... 21

*State Farm Fire & Cas. Co. v. Superior Court*,
   45 Cal. App. 4th 1093 (Cal. Ct. App. 1996) .............................................. 16

*Sullivan v. NFL*,
   34 F.3d 1091 (1st Cir. 1994)........................................................................... 5

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   536 F. Supp. 2d 1191 (C.D. Cal. 2008) ........................................................ 4

*Trans Sport, Inc. v. Starter Sportswear, Inc.*,
   964 F.2d 186 (2d Cir. 1992) ........................................................................... 8

*United States v. Microsoft Corp.*,
   87 F. Supp. 2d 30 (D.D.C. 2000) ................................................................ 14

*United States v. Westinghouse*,
   648 F.2d 642 (9th Cir. 1981) ......................................................................... 8

*Util. Consumers' Action Network v. Powernet Global Commc'n*,
   No. 06-1773, 2006 U.S. Dist LEXIS 78546 (S.D. Cal. Oct. 20, 2006) ............... 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

*Verizon Comm. v. Law Offices of Curtis V. Trinko*
    540 U.S. 398, 407 (2004) ................................................................................................ 9

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ......................................................... 13

*WAKA, LLC v. DC Kickball*,
    517 F. Supp. 2d 245 (D.D.C. 2007) ...................................................................... 14

**STATUTES**

California Business & Professions Code § 16700 ............................................... 11, 13

California Business & Professions Code § 16720 ............................................... 15, 20

California Business & Professions Code § 17200 ........................................... 15, 16, 20

**OTHER AUTHORITIES**

Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing of Intellectual Property* § 4.1.2 (1995) ................................................................. 7

Gregory J. Werden, *Antitrust Analysis of Joint Ventures*, 66 Antitrust L.J. 701,
    730 (1998) ................................................................................................................. 6

*IP and Antitrust* §13.2b (2002 ed. & Supp. 2007) ............................................... 6, 7

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §18.48
    (2008) ....................................................................................................................... 8

Sherman Act, 15 U.S.C. § 2 ................................................................... 1, 2, 6, 8

**RULES**

Federal Rules of Civil Procedure 12 .................................................................. 1, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE THAT on December 4, 2008 at 2:30 p.m., or as soon thereafter

3 as the matter may be heard, in the United States District Court, Northern District of California,

4 San Francisco Division, located at San Francisco, CA, Courtroom 6, before the Honorable

5 Vaughn R. Walker, Defendant Electronic Arts Inc. will, and hereby does, move to dismiss each

6 claim for relief asserted in plaintiffs' Class Action Complaint ("Complaint") on the grounds that

7 they fail to state a claim upon which relief can be granted.  This motion is based on this Notice of

8 Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on

9 file in this action, and upon such other matters presented to the Court at the time of the hearing.

10

**RELIEF SOUGHT**

11      Defendant Electronic Arts Inc. seeks dismissal of each claim asserted in plaintiffs'

12 Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

13

14 Dated:  August 25, 2008                    Respectfully Submitted,

15                                            LATHAM & WATKINS LLP
                                               Daniel M. Wall
16                                             Timothy L. O'Mara

17

18                                            By _____/s/ Daniel M. Wall_____
                                               Daniel M. Wall
19                                             Attorneys for Defendant
                                               ELECTRONIC ARTS INC.
20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1      <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2      **I.    INTRODUCTION**

3      Electronic Arts Inc. ("EA"), headquartered in Redwood City, is one of the leading

4      developers and publishers of videogames. EA is accused of monopolizing an alleged market for

5      interactive football software because it bid on and was awarded the exclusive rights to make

6      videogames using the trademarks and other intellectual property rights of the National Football

7      League ("NFL") and its Players' Association, the Arena Football League ("AFL"), and the

8      National Collegiate Athletic Association ("NCAA"). That is all EA is accused of. The conduct

9      alleged in the Complaint is strikingly simple:

10      ▪    In December 2004, EA entered into an exclusive agreement with the NFL and its
        Players Association.

11

12      ▪    In January 2005, EA entered into an exclusive agreement with the AFL.

13      ▪    In April 2005, EA entered into an exclusive agreement with the NCAA, through its
        licensing arm.

14      The antitrust theory of the Complaint is that EA "killed off" its only football competition

15      by entering into the NFL exclusive (the NFL being "[b]y far the most important football league

16      from the perspective of interactive football software makers"), and then raised entry barriers by

17      also acquiring the AFL and NCAA licenses. This, allegedly, allowed EA to raise the price of its

18      NFL video game, *Madden NFL*, above competitive levels.

19      The two plaintiffs and proposed class representatives are indirect purchasers of *Madden*

20      *NFL*. The proposed class is defined to exclude direct purchasers such as Best Buy and Gamestop,

21      the retailers from which plaintiffs bought *Madden NFL*. Despite their indirect purchaser status,

22      plaintiffs advance a claim of monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2.

23      This is followed by twenty state antitrust claims, twenty state consumer protection and unfair

24      competition claims, and a common law claim of unjust enrichment.

25      Plaintiffs' case is fatally flawed on multiple levels, not the least of which is that plaintiffs'

26      alleged market of "interactive football software" is untenable. It is far-fetched, to say the least, for

27      anyone to claim that NCAA and AFL branded football games are unique and better constraints on

28      *Madden NFL* than the many other—more popular—video games released in the same time frame.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    But the gerrymandered market aside, the Complaint is facially deficient for two reasons.  First, the

2    federal antitrust claim is clearly barred by the *Illinois Brick* doctrine.  With few exceptions, only

3    direct purchasers may bring federal antitrust claims, and plaintiffs plead no facts that come close

4    to any exception.  Second, it is not illegal—under any theory—for EA to bid on exclusive licenses

5    that intellectual property owners choose to offer.  Exclusive intellectual property licenses are

6    commonplace, and widely accepted in commerce and under the law as one legitimate way for an

7    intellectual property rights holder to maximize the value of its property.  Highly analogous case

8    law holds that a sports league—in particular, the NFL—has the right to enter into exclusive rights

9    agreements, and potential licensees have a right to bid on such licenses.  *See American Needle,*

10   *Inc. v. NFL*, No. 07-4006, 2008 U.S. App. LEXIS 17553, 2008 WL 3822782 (7th Cir. Aug. 18,

11   2008) (dismissing antitrust claims against the NFL and its exclusive apparel licensee, Reebok).

12   Under this authority, it is clear that the NFL-EA agreement is perfectly lawful.

13        It makes no difference that EA also bid on and obtained exclusives from the AFL and

14   NCAA.  Plaintiffs do not put much weight on these licenses, conceding that the NFL license is

15   much more significant commercially.  Regardless, those leagues also had legal rights to license

16   exclusively, and EA had a right to compete for those licenses.  Antitrust law does not limit EA's

17   pursuit of the license rights that sports leagues and others offer videogame developers.  It is

18   distinctly anticompetitive for plaintiffs to suggest otherwise, as any such rule would deny the

19   licensors the benefits of bidding competition.

20        Accordingly, all of plaintiffs' claims are deficient as a matter of law, and plaintiffs have

21   no prospect of amending them to cure the defects.  The Court should dismiss the Complaint.

22   **II.    STATEMENT OF ISSUES TO BE DECIDED**

23        1. Whether plaintiffs' Sherman Act § 2 claim is barred by the *Illinois Brick* doctrine,

24            which prohibits indirect purchasers from recovering overcharges premised on the

25            anticompetitive conduct of manufacturers or remote sellers;

26        2. Whether it was an unlawful act of monopolization (under state or federal law) for EA

27            to acquire exclusive licenses of intellectual property rights from three football

28            leagues;

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

3. Whether plaintiffs lack standing to maintain state antitrust claims under the laws of the eighteen states where none of the plaintiffs reside; and whether plaintiffs have stated a claim under any such statutes;

4. Whether plaintiffs have stated a claim under the consumer protection statutes of California and the District of Columbia;

5. Whether plaintiffs lack standing to maintain state consumer protection claims under the laws of the eighteen states where none of the plaintiffs reside; and whether plaintiffs have stated a claim under any such statutes;

6. Whether  plaintiffs' attempt to bring an action on behalf of a nationwide class under California law fails the Supreme Court's *Shutts* test; and

7. Whether plaintiffs' Fourth Cause of Action for unjust enrichment is improper under California law.

## III.     LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint.  *See* Fed. R. Civ. P. 12(b)(6); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A complaint should be dismissed under Rule 12(b)(6) "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a motion to dismiss, a court must accept as true all material allegations of fact in the complaint, but need not accept conclusory allegations or unwarranted inferences.  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996); *see also In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 313-14 (N.D. Cal. 2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

The Supreme Court recently addressed pleading standards in general—and antitrust pleading standards in particular—in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). Stressing the dangers of permitting costly antitrust litigation to proceed based on speculation and conclusory allegations, the Court held that a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974, and that "raise a right to relief above the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    speculative level." *Id.* at 1965.  Stated simply, the Court required plaintiffs to plead facts

2    sufficient to "nudge[] their claims across the line from conceivable to plausible," or suffer

3    dismissal.  *Id.* at 1974.  The Court "retired" the oft-quoted statement from *Conley v. Gibson,* 355

4    U. S. 41, 45-46 (1957), that a complaint cannot be dismissed on the pleadings "unless it appears

5    beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

6    entitle him to relief." *Twombly,* 127 S.Ct. at 1968 ("[A]fter puzzling the profession for 50 years,

7    this famous observation has earned its retirement.").

8         In the single year since *Twombly* was decided, courts have become noticeably less

9    tolerant of improperly pleaded complaints, including antitrust complaints that contain conclusory

10   or implausible market definitions.[1]  As one court noted, "the costs of modern federal antitrust

11   litigation and the increasing caseload of the federal courts counsels against sending the parties

12   into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim

13   from the events related in the complaint."  *International Norcent Technology v. Koninklijke*

14   *Philips Electronics N.V.*, No. 07-00043, 2007 U.S. Dist. LEXIS 89946, at *17, 2007 WL

15   4976364, at *5 (C.D. Cal. Oct. 29, 2007) (citing *Twombly*).

16   **IV.   PLAINTIFFS' ANTITRUST ALLEGATIONS FAIL TO STATE A CLAIM**

17        **A.    The Material Allegations**

18        The material allegations stated in the Complaint are sparse, at best.  Plaintiffs are

19   consumers who purport to sue on behalf of a putative class of "all persons in the United States

20   who purchased and/or licensed from Electronic Arts a copy of interactive football software with

21   a release date of August 2005 or later."  Compl. ¶ 22.  The proposed class is specifically defined

22   to exclude direct purchasers.  *Id.*  The heart of the Complaint is that:  "Through an unlawful and

23   anticompetitive series of exclusive agreements with the National Football League, the NFL

24

---

25   [1]   *See, e.g., Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042 (9th Cir. 2008); *Ticketmaster L.L.C. v. RMG Techs., Inc.,* 536 F. Supp. 2d 1191 (C.D. Cal. 2008); *McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.,* No. 08-00080, 2008 U.S. Dist. LEXIS 47428, 2008 WL 2437739 (D. Haw. June 17, 2008); *Person v. Google, Inc.,* No. 06-7297, 2007 U.S. Dist. LEXIS 47920, 2007 WL 1831111 (N.D. Cal. June 25, 2007); *see also Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 524 F.3d 726 (6th Cir. 2008); *In re Elevator Antitrust Litig.,* 502 F.3d 47 (2d Cir. 2007).

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    Players Union, Arena Football League and the National Collegiate Athletic Association

2    ("NCAA"), Electronic Arts has driven its competition out of the market for interactive football

3    software … and has prevented additional competitors from entering the market." *Id.* ¶ 1.  The

4    Complaint alleges that EA entered into an exclusive agreement with the NFL and its Players

5    Association in December 2004, with the AFL in January 2005, and with the NCAA in April

6    2005. *Id.* ¶ 13-14.  The Complaint also alleges that "[a]s a direct result of this anticompetitive

7    conduct, the price of interactive football software has soared…." *Id.* ¶ 1.

8        **B.    Plaintiffs' Section 2 Claim Is Barred by the *Illinois Brick* Doctrine**

9        Plaintiffs allege that they purchased *Madden NFL*—the allegedly monopolized product

10   developed and distributed by EA—from Best Buy and Gamestop retail stores.  Comp. ¶¶ 2-3.

11   Plaintiffs do not claim that they had any direct dealings with EA.  Additionally, plaintiffs purport

12   to sue on behalf of a class of consumers who also purchased EA "interactive football software,"

13   *excluding* "persons purchasing directly from Electronic Arts." *Id.* ¶ 22.  In short, plaintiffs admit

14   that they and the class they seek to represent are indirect purchasers.

15       Thirty years ago in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court

16   held that federal antitrust laws prohibit indirect purchasers from recovering overcharges

17   premised on the anticompetitive conduct of remote sellers.  The *Illinois Brick* doctrine continues

18   to be applied vigorously by the federal courts, resulting in the routine dismissal of claims by

19   indirect purchasers for damages under federal law.  *See, e.g.*, *In re Graphics Processing Units*

20   *Antitrust Litig.*, 527 F.Supp. 2d 1011, 1025 (N.D. Cal. 2007) ("[T]here is virtually no monetary

21   federal antitrust remedy for indirect purchasers.").

22       There are a few narrow exceptions to the *Illinois Brick* doctrine, where indirect

23   purchasers might be permitted to press forward under federal antitrust law.[2]  However, these

24   exceptions are implausible in the case at hand.  Plaintiffs have not even attempted to plead the

25   _____

[2]   For example, indirect purchasers may be able to obtain damages under federal antitrust law if (i) the
26   defendant either owns and controls the direct purchaser, *Royal Printing Co. v. Kimberly-Clark Corp.*,
621 F.2d 323, 326-27 (9th Cir. 1980), or (ii) plaintiffs have expressly secured the right to pursue such
27   claims on the direct purchaser's behalf, *Sullivan v. NFL*, 34 F.3d 1091, 1106 (1st Cir. 1994).  *See also*
ABA Section of Antitrust Law, Antitrust Law Developments 832-33 (6th ed. 2007).

28

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

5                DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    facts necessary to trigger any such exception.  Consequently, plaintiffs' First Cause of Action,

2    alleging a Sherman Act § 2 claim, must be dismissed.

3

4          C.     **Plaintiffs' Monopolization Claim Fails Because the Alleged Harm Arises from Lawful Exclusive Licenses of Intellectual Property Rights**

5          All of plaintiffs' antitrust claims (both federal and state) fail for yet another reason:  it is

6    not illegal—under any theory—for EA to bid on exclusive licenses that intellectual property

7    owners choose to offer.  The crux of the plaintiffs' monopolization theory is that EA entered into

8    an exclusive license with the NFL to end competition with Take-Two Interactive ("Take-Two"),

9    thereby allowing EA to raise the price of *Madden NFL* above competitive levels.  Stated simply,

10   the plaintiffs claim that EA and the NFL contracted to create an unlawful monopoly.[3]  The claim

11   that EA's exclusive license with the NFL harmed competition by enhancing EA's market power

12   is fatally flawed.  Indeed, this very proposition—involving essentially the same intellectual

13   property rights—was recently addressed and rejected by the Seventh Circuit in *American Needle,*

14   *Inc. v. NFL*, No. 07-4006, 2008 U.S. App. LEXIS 17553, 2008 WL 3822782 (7th Cir. Aug. 18,

15   2008).

16         In *American Needle*, the plaintiffs challenged the NFL's decision to end all intra-brand

17   competition for NFL-branded apparel, by agreeing to license its trademarks and other intellectual

18   ---

[3]   Under plaintiffs' theory of the case, the NFL was obligated to continue licensing its bundle of IP rights

19   to Take-Two, even if the NFL determined that Take-Two's pricing policies (i) undervalued its IP rights (from which it derives royalty income) and (ii) was fundamentally inconsistent with its brand image.

20   Moreover, under plaintiffs' theory, the NFL would be left with no recourse to revisit its licensing strategy if it believed that intra-brand competition was decreasing the ability or incentive of its licensees to invest in research and development at optimal levels.  For the reasons discussed more fully below, *see*

21   *infra*, there is simply no support in the law for any argument that the rights of an IP owner are compromised in this way.  To the contrary, antitrust law "does not itself impose an obligation" to license

22   intellectual property rights; "such an obligation would … conflict directly with the rights granted to an intellectual property owner by the intellectual property laws."  Herbert Hovenkamp, et al., *IP and*

23   *Antitrust* §13.2b (2002 ed. & Supp. 2007).  Indeed, it is universally accepted that an IP holder is free to select the licensing partner(s) that it believes will prove to be the best steward of its brand.  *See, e.g.*,

24   Gregory J. Werden, *Antitrust Analysis of Joint Ventures*, 66 Antitrust L.J. 701, 730 (1998) (noting that antitrust law does not prevent an owner of valuable trademarks from licensing exclusively to a desired

25   partner, because any rule to the contrary is "particularly likely to impede rather than promote competition when the access sought is to a brand.  The value of the brand can be significantly reduced

26   by the conduct of a single licensee.").

27

28

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1   property to Reebok on an exclusive basis.  In previous years, the NFL had licensed the same

2   bundle of rights to multiple clothing manufacturers.  The Seventh Circuit held that the plaintiff

3   had "no colorable claim that the NFL teams and NFL Properties created a monopoly by

4   awarding Rebook the exclusive" license, 2008 U.S. App. LEXIS 17553, at *22-23, 2008 WL

5   3822782, at *8, because the NFL teams are "free under § 2 [of the Sherman Act] to license their

6   intellectual property on an exclusive basis," even if that decision "reduce[s] the number of

7   companies to whom they grant licenses."  *Id.* (citing *Chicago Prof. Sports Ltd  v. NBA*, 95 F.3d

8   593, 598 (7th Cir. 1996) (holding that "the producers of Star Trek may decide to release two

9   episodes a week and grant exclusive licenses to show them, even though this reduces the number

10  of times episodes appear on TV in a given market.").[4]

11      *American Needle* confirms that even if the grant of an exclusive license has the potential

12  to enhance the market power of a single developer—or hinder the ability of unlicensed

13  developers to compete in the market—the conduct is not actionable where the license is between

14  non-competitors.[5]  Rather, any such "exclusionary effects" fall properly within the exclusionary

15  scope of the IP rights conferred and, therefore, are beyond reproach.  *Id.*; *see also Fleer Corp. v.*

16  *Topps Chewing Gum*, 658 F.2d 139, 154 (3d Cir. 1981) (holding that although an exclusive

17  license with MLB Players Association "might depress the overall sales of baseball products," the

18  exclusive license "is not evidence of [illegal] monopoly power.  Rather, it reflects that not every

19  opportunity for a publicity license must be used.  The right to withhold and negotiate publicity

20

21  [4]  *See also American Needle, Inc. v. New Orleans Louisiana Saints*, 496 F. Supp. 2d 941, 942 & n.2 (N.D. Ill. 2007) (dismissing the complaint on the grounds that "the owner or licensor of intellectual property

22  can grant a license to one or to many," and whether the designated exclusive licensee "urged, solicited, or vigorously argued for the change [from a non-exclusive to exclusive license] is irrelevant."), *aff'd sub*

23  *nom. American Needle, Inc. v. NFL*, No. 07-4006, 2008 U.S. App. LEXIS 17553, 2008 WL 3822782 (7th Cir. Aug. 18, 2008).

24  [5]  The U.S. antitrust agencies recognize that exclusive licenses between parties that stand in a vertical

25  relationship rarely, if ever, generate antitrust concerns.  Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing of Intellectual Property* § 4.1.2 (1995) ( "Generally, an exclusive

26  license may raise antitrust concerns only if the licensees themselves, or the licensor and its licensees, are in a horizontal relationship."); *see also* Herbert Hovenkamp, et al., *IP and Antitrust* § 13.2c (2002 ed. &

27  Supp. 2007) ("An antitrust violation is even less likely where the intellectual property owner does not compete directly with the disfavored licensee.").

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1   selectively for economic gain is implicit in the very nature of the right of publicity."). For this

2   reason, courts readily acknowledge that "there is no argument that [a licensor] would have

3   violated antitrust law … had it granted an exclusive, nonassignable license." *Cook Inc. v. Boston*

4   *Sci. Corp.*, 333 F.3d 737, 74 (7th Cir. 2003).[6]

5          *American Needle* is not an aberration. In fact, exclusive licensing of IP rights by

6   professional sports leagues is common place, and federal courts have consistently rejected

7   challenges to these exclusive licensing arrangements. *See, e.g., Fleer Corp.*, 658 F.2d at 140,

8   150-54 ("[S]eries of interlocking exclusive licensing contracts" relating to trademarks did not

9   violate the Sherman Act; "as a licensor, the MLBPA is free to grant licenses to any competitor,

10  or none at all."); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186 (2d Cir. 1992)

11  (affirming dismissal of a § 2 challenge involving exclusive licensing of trademarks by the NFL

12  and other professional sports leagues); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 775 F. Supp.

13  536 (N.D.N.Y. 1991) (holding that licensee could protect interests in legitimate exclusive

14  licenses).[7] Consequently, plaintiffs' Complaint fails—as a matter of law—at the threshold.

15

16

17  ────────────────

18  [6]  *See also United States v. Westinghouse*, 648 F.2d 642, 647 (9th Cir. 1981) ("The right to license [a] patent, exclusively or otherwise, or to refuse to license at all, is the 'untrammeled right' of the patentee."); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 949 (Fed. Cir. 1993) ("[T]he grant of an

19  exclusive license is a lawful incident of the right to exclude…. The University's right to select its licensees, the decision to grant exclusive or non-exclusive licenses … and the pursuit of optimum royalty income, are not of themselves acts in restraint of trade."); 3 Phillip E. Areeda & Herbert

20  Hovenkamp, *Antitrust Law* ¶ 711b (2d ed. 2002) ("All forms of intellectual property have in common that the holder, even a monopolist, is ordinarily free either to license the property right to others or to use

21  it exclusively. Antitrust compels licensing of copyrights, trademarks, or trade secrets even less often than it compels the licensing of patents."); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

22  *Competition* §18.48 (2008) (noting that trademark law, unlike copyright and patent laws, requires the trademark owner to maintain tight control over its trademark or else the trademark may become

23  invalidated: "Uncontrolled licensing may well cause a designation to lose its meaning as a trademark.").

24  [7]  It should come as no surprise that antitrust law allows IP holders to engage in exclusive licensing strategies. There are compelling, pro-competitive justifications in favor of exclusive licensing. Most

25  notably, the strategy is widely recognized as the best method of encouraging licensees to invest heavily in the development and dissemination of the IP rights. *See, e.g., Cook, Inc. v. Boston Sci. Corp.*, 333

26  F.3d 737, 740 (7th Cir. 2003) (emphasizing that an owner of intellectual property "can ordinarily be expected … to grant an exclusive license in order to encourage the licensee to invest in the further

27  development of the licensed process or product.").

28

8

1

     **D.**    **Plaintiffs Fail to State a Plausible Claim that EA Has Enhanced Its Market Power Through the Unlawful Acquisition of Allegedly Related IP Rights**

2

3          As indicated, the grant of an exclusive license alone cannot form the basis of a

4   monopolization claim.  Accordingly, to survive summary dismissal, plaintiffs must adequately

5   allege that EA has engaged in other actions that have unlawfully enhanced its ability to raise

6   prices on *Madden NFL*—over and above—any such power that may have been lawfully

7   conferred through its exclusive license with the NFL.[8]  Presumably, plaintiffs will assert that

8   EA's licenses with the NCAA and AFL, when coupled with its NFL license, qualify as the

9   requisite anticompetitive conduct, on the theory that EA erected "substantial barriers to entry and

10   expansion," Compl. ¶ 34, by "prevent[ing] Take-Two and others from re-entering the market

11   with non-NFL branded interactive software."  *Id.* ¶ 16.  Such a theory is completely inadequate.

12   There is simply no basis in antitrust law to support a claim that, if successful, would abridge the

13   rights of the NCAA and AFL to solicit and accept an offer of an exclusive license from its

14   preferred development and distribution partner.[9]

15          To the contrary, federal courts have consistently held that where, as here, the IP licenses

16   at issue are for a short-duration, and subject to regular rebidding, the law should promote, rather

17   than prohibit, competition among prospective licensees for such exclusive contracts.  The

18   Seventh Circuit's opinion in *Paddock Publications, Inc. v. Chicago Tribune Company*, 103 F.3d

19

20   [8]  In *Verizon Comm. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) the Supreme Court held that a monopolization claim cannot be premised on the exercise of market power that is lawfully obtained,

21   such as that which flows from superior business acumen or a proper grant of exclusive IP rights; rather, only illegal, anticompetitive conduct that enhances market power can trigger Sherman Act Section 2

22   claim.  *Id.* at 407 ("The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system….  To safeguard

23   the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*.") (emphasis in original).

24   [9]  The plaintiffs' premise, if allowed, would lead to the perverse result of prohibiting the NCAA and AFL

25   from soliciting and accepting competitive offers from their preferred licensees, and denying them the opportunity to partner with the licensee they deem to be best positioned to develop, disseminate, and

26   monetize their intellectual property rights.  There is no support in the law indicating that Section 2 was intended to abrogate the value of a licensor's IP rights in this way.  To the contrary, antitrust tribunals

27   should not proscribe a legitimate owner of intellectual property from maximizing its innovation profits. 3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 720a, 720b (2d. ed. 2002).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    42 (7th Cir. 1997), is particularly instructive.  In *Paddock*, Judge Easterbrook illustrated the point

2    with a hypothetical, stating:

3            Competition-for-the-contract is a form of competition that antitrust
        laws protect rather than proscribe, and it is common.  Every year or

4        two, General Motors, Ford, and Chrysler invite tire manufacturers
        to bid for exclusive rights to have their tires used in the

5        manufacturers' cars.  *Exclusive contracts make the market hard to
        enter in mid-year but cannot stifle competition over the long run,*

6        *and competition of this kind drives down the price of tires, to the*
        *ultimate benefit of consumers.*

7

8    *Id*. at 45 (emphasis added).  Showing little sympathy for the claim that defendants had

9    monopolized the market for supplemental news services by locking up a number of exclusive

10   licenses, Judge Easterbrook went on to conclude that "this case does not involve a single facility

11   that monopolizes one level of production and creates a potential to extend the monopoly to

12   others…. Other firms that want to enter the market can do so by competing at intervals for these

13   contracts."  *Id*.  Therefore, plaintiffs "should try to outbid [defendants] in the marketplace, rather

14   than to outmaneuver them in court."  *Id*. at 47.

15           In a case analogous to the matter at hand, the Third Circuit tackled the issue of whether

16   Section 2 precluded a manufacturer of baseball cards from securing exclusive licenses from all

17   Major League Baseball players and its Players Association.  *See Fleer Corp. v. Topps Chewing*

18   *Gum*, 658 F.2d 139, 140, 154 (3d Cir. 1981).  The Court concluded that "merely because Topps,

19   through individual contracts with every minor league player, managed to obtain license

20   agreements with all major league players does not make the aggregation of these contracts an

21   unlawful combination in restraint of trade."  *Id.* at 149-50.  A critical factor in the Court's

22   decision was that the exclusive licenses at issue were for only five years; consequently, the

23   defendant had not absolutely foreclosed competition for subsequent contracts with (i) the players

24   union, (ii) major league players who may wish not to renew their contracts, or (iii) minor league

25   players yet to reach the major leagues.  *Id.*  Notably, the court emphasized the fact "that such a

26   program of head-to-head competition might take six or seven years to bear fruit does not make

27   Topps' agreements anticompetitive."  *Id.*; *see also Lawlor v. National Screen Service Corp.*, 270

28   F.2d 146, 154 (3d Cir. 1959) (holding that an accumulation of exclusive licenses with major film

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    studios to create and distribute promotional materials were not anticompetitive, in part because

2    exclusive licenses were limited in duration to five years).[10]

3         Here, plaintiffs allege no facts suggesting that Take-Two or any other video game

4    publishers are incapable of competing for future licenses with the NFL, NCAA, or AFL.  To the

5    contrary, plaintiffs acknowledge that the challenged licenses will be renegotiated in the next four

6    years, Compl. ¶ 17, making them shorter in duration than those at issue in *Fleer* or *Lawlor*.

7    Consequently, the fact that EA has an exclusive license with not only the NFL, but also the

8    NCAA and the AFL, does not change the analysis; under controlling law, these exclusive

9    licenses are immune from antitrust challenge.  *American Needle*, 2008 U.S. App. LEXIS 17553,

10    at *22-23, 2008 WL 3822782, at *8.

11         E.    **Plaintiffs' Alleged Violation of the California Cartwright Act Fails to Plead
              Facts Sufficient to State a Plausible Conspiracy Claim under *Twombly***
12

13         Plaintiffs fail to allege a recognizable claim under California's Cartwright Act, Cal. Bus.

14    & Prof. Code § 16700 *et seq*. (the "Cartwright Act").

15         The Cartwright Act prohibits agreements to restrain trade.  *Id.* §§16720, 16726.

16    California law requires a "high degree of particularity in the pleading of Cartwright Act

17    violations," and generalized allegations of antitrust violations usually are insufficient.  *Freeman*

18    *v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 196 (1999) (summarizing Cartwright Act

19    law).  Cartwright Act claims "are properly dismissed where the complaint makes conclusory

20    allegations of a combination and does not allege with factual particularity that separate entities

21    maintaining separate and independent interests combined for the purpose of restraining trade."

22    *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 320-321 (N.D. Cal. 2007) (citation

23    omitted) (dismissing Cartwright allegations).  This is consistent with the recent U.S. Supreme

24

25    ─────────────────────
      [10]  Cases such as *Kobe v. Dempsey*, 198 F.2d 416 (10th Cir. 1952), which deal with the permanent
          acquisitions of all relevant patents in an industry, some of which were acquired from competitors, are
26        not on point.  *Kobe* and similar cases are readily distinguishable from the case at hand, where the IP
          licenses in question are (i) between non-competitors; (ii) for a short-duration (i.e., not a purchase of the
27        underlying IP right); and (iii) limited to branding rights (i.e., trademarks and publicity licenses), which
          unlike patents or copyrights, do not foreclose entry or the manufacture of identical products.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1   Court precedent in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), where the Court

2   established that in order to plead a sufficient conspiracy claim under Section 1 of the Sherman

3   Act in federal court, a plaintiff must plead a "plausible" conspiracy grounded in some minimum

4   facts necessary to satisfy the Rule 8 requirement that the plaintiff is entitled to relief.  *See id.* at

5   1964-65 (2007) (finding that in pleading a Section 1 claim, "a plaintiff's obligation to provide

6   the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

7   formulaic recitation of the elements of a cause of action will not do.").

8           Here, plaintiffs have not pleaded any plausible conspiracy for which they would be

9   entitled to relief under a Cartwright Act claim.  The sum total of plaintiffs' conspiracy

10  allegations are that, "by signing the exclusive agreements as alleged above," EA has "conspired,

11  and agreed and continues to combine, conspire and agree to unreasonably restrain and

12  monopolize the market for interactive football software."  Compl. ¶ 42.  This cursory allegation

13  is hopelessly vague, being nothing more than a mere recitation of the language in the statute, and

14  fails even to clearly identify with which entity or entities EA is alleged to have conspired.

15          Moreover, there is no possibility of amending to cure this defect.  As explained above,

16  the alleged conduct simply is not, as a matter of law, a restraint of trade that entitles plaintiffs to

17  relief.  Rather, it is a lawful act by the NFL, NCAA, and AFL to practice their intellectual

18  property as they see fit.  *See supra* Section IV.C.  In fact, this Court has held that parties to an

19  exclusive license who are not competitors are legally incapable of "conspiring" in violation of

20  the antitrust laws.  *See Levi Case Co. v. ATS Prods.*, 788 F. Supp. 428, 431-32 (N.D. Cal. 1992);

21  *see also Jack Russell Terrier Network v. American Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th

22  Cir. 2005) (citing with approval *Levi Case Co.* as a logical extension of the *Copperweld* rule

23  baring antitrust conspiracy challenges to contracting parties that lack independent economic

24  interests).[11]  Plaintiffs' Cartwright Act claim therefore must be dismissed with prejudice.

25

26  _____

[11]  This Court has held that:  "It is established that the interpretation of Sherman Act and Cartwright Act are

27  to be interpreted in harmony with one another.  Interpretation of federal antitrust law is, moreover,
    applicable to the Cartwright Act."  *Davis v. Pac. Bell*, 204 F. Supp. 2d 1236, 1243 (N.D. Cal. 2002)

28  (citing *Redwood Theaters, Inc. v. Festival Enterprise*, Inc., 908 F.2d 477, 481 (9th Cir. 1990)); *see also*

1

## F.    Plaintiffs' State Antitrust Claims Fail – Substantively and/or for Lack of Standing

2

3      In Count Five of the Complaint, plaintiffs' allege that EA has violated the antitrust laws

4   of nineteen different states and the District of Columbia, based on the exact same facts alleged in

5   support of the federal monopolization charge.  Compl. ¶¶ 50-69.  Notably, plaintiffs only seek to

6   incorporate these state antitrust allegations into the Complaint if the Court does not apply

7   California law to the purported nationwide class.  *Id.*  Regardless, each of plaintiffs' state

8   antitrust claims set forth in Count Five fails as a matter of law.

9      First, plaintiffs' claim with regard to California Bus. & Prof. Code §§ 16700, *et seq*., as

10   stated in ¶ 51, is wholly duplicative of Count Two of the Complaint (alleging a violation of the

11   California Cartwright Act), and therefore, should be dismissed for the reasons already noted

12   above.  *See supra* Sections IV.C, IV.D, and IV.E.

13      Second, plaintiffs' claim with regard to the District of Columbia's antitrust statute, as

14   stated in ¶ 52, should be dismissed for the same reasons that plaintiffs' federal monopolization

15   claim fails.  The structure and language of the District of Columbia's antitrust statute is virtually

16   identical to analogue sections of the Sherman Act.[12]  More importantly, the District of

17   Columbia's antitrust statute provides that federal antitrust case law is authoritative when

18   interpreting the companion provisions of the District of Columbia antitrust code. [13]  Accordingly,

19
20    *Biljac Assoc. v. First Interstate Bank*, 218 Cal. App. 3d 1410, 1420 (1990) ("In antitrust actions brought under the Cartwright Act, we look to Interpretations of its federal law counterpart the Sherman Act… since the federal act was a model for our own in most respects."); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (1995) ("Because the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act."); State Bar of California, *California Antitrust and Unfair Competition*, § 1.06 (3d. 2003) ("[T]he Cartwright Act was directly based on the Sherman Act and that Sherman Act cases are of great significance in the interpretation of the Cartwright Act.").
21
22
23

24   [12]  *Compare* D.C. Code Ann. § 28-4503 ("Monopolization": "It shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, all or any part of which is within the District of Columbia.")
25   *with* the Sherman Act § 2 ("Monopolizing trade": It shall be unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part
26   of the trade or commerce among the several States . . . .").

27   [13]  D.C. Code Ann. § 28-4515 (courts "may use as a guide interpretations given by federal courts to comparable antitrust statutes.").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    courts have relied on the well-developed body of federal case law when interpreting the District

2    of Columbia's antitrust statute, and not one court—state or federal—has construed the relevant

3    provisions in a manner that purports to expand or contract the conduct proscribed by the

4    Sherman Act.[14]

5          Finally, the plaintiffs lack standing to pursue the remainder of the state antitrust claims

6    set forth in Count Five.  The named plaintiffs purport to have purchased copies of *Madden NFL*

7    at retail stores in California and Washington, DC, their respective places of residence.  Compl.

8    ¶¶ 2-3.  The Complaint contains no other allegations that plaintiffs have lived in, or purchased

9    additional copies of *Madden NFL*, in states other then their places of residence during the

10   relevant time frame.  This Court has squarely held that plaintiffs may not avail themselves of the

11   protections of the antitrust laws of states for which they are not residents.  *See In re Ditropan XL*

12   *Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (granting motion to dismiss;

13   holding that indirect purchasers lacked standing to assert state antitrust claims for states in which

14   they do not reside).[15]  Because "at least one named plaintiff must have standing with respect to

15   each claim the class representatives seek to bring," claims based on state laws where no named

16   plaintiff resides must be dismissed.  *Id*.  Here, the Court must dismiss—as a matter of law—

17   plaintiffs' claims relating to the eighteen states for which the named plaintiffs' are non-residents.

18

---

19   [14] *See United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 54 (D.D.C. 2000) (same evidence relevant to
         the Court's determination under Section 2 of the Sherman Act controls under the comparable D.C.

20       Code); *WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245, 253 (D.D.C. 2007) ("Because defendants have
         not sufficiently alleged a violation of Section 1 of the Sherman Antitrust Act in their counterclaims, they

21       also fail to state a claim under D.C. law prohibiting contract, combination, or conspiracy to restrain
         trade.").

22   [15] *See also In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1368-71 (S.D. Fla. 2001).
         In *Terazosin*, indirect purchasers sued under the Sherman Act and eighteen state antitrust laws.  The

23       Court summarily dismissed the Sherman Act claim under *Illinois Brick*, as well as the state antitrust
         claims where the *Illinois Brick* had not been expressly repealed.  For the remaining states, the named

24       plaintiffs argued that they could sue under state laws where they did not reside "in a representative
         capacity without personally having standing to assert them."  *Id*. at 1371.  The district court disagreed.

25       *Id*. at 1371-72 & n.5.  The court noted that each state law "claim must be analyzed separately, and a
         claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury

26       that gives rise to that claim."  *Id*. at 1371 (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir.
         1987)).  For states where there was not a named plaintiff, the court held there was not a plaintiff who

27       was within the state statute's zone of interest and dismissed those claims on standing grounds.  *Id*.

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    EA further submits that even if the plaintiffs had standing to assert antitrust claims of

2    non-resident states—which they do not—such claims would fail for a host of additional reasons,

3    including:

4    ▪ Plaintiffs cannot state a claim under the antitrust laws of California, Kansas, New
         York, and Tennessee because those state statutes refer only to concerted action and

5         have been interpreted by courts in those states as inapplicable to unilateral conduct.[16]

6    ▪ Plaintiffs' claim under the antitrust law of New York also fails because private
         persons are precluded from bringing a class action under the New York statute.[17]

7    ▪ Mississippi, Nevada, South Dakota, Tennessee, and Wisconsin have expressly limited
         the purview of their antitrust statutes to conduct that is predominantly intrastate in

8         nature.[18]

9    ▪ Any antitrust claim asserted under the laws of Arizona, the District of Columbia,
         Iowa, Maine, Michigan, Nebraska, New Mexico, North Dakota, South Dakota,

10        Vermont, West Virginia, and Wisconsin fails for the same reasons that plaintiffs
         federal monopolization claim fails, as there is no appreciable difference between the

11        conduct prescribed by Section 2 of Sherman Act and the conduct proscribed by the
         companion provisions of these states.[19]

12   **V.    PLAINTIFFS' CLAIMS UNDER THE STATE CONSUMER PROTECTION

13         STATUTES MUST BE DISMISSED**

14        Count Three of the Complaint alleges that EA violated the consumer protection law of

15   California, Cal. Bus. & Prof. Code § 17200, and Count Six alleges that EA violated the

16   consumer protection statutes of eighteen states and the District of Columbia.  Compl. ¶¶ 44-45,

17   73-91.  These allegations are premised on the exact same facts alleged in support of the federal

18

---

19   [16] *See e.g.,* Cal. Bus. & Prof. Code §§ 16720, 16726 (providing that, under the California antitrust statute,
         plaintiff must allege a "combination."); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir.

20        1986) (holding that a challenge to unilateral conduct is not cognizable under California's Cartwright Act
         because it does not involve a combination); Kan. Stat. Ann. §50-132 (prohibiting combinations and

21        conspiracies only); Tenn. Code. Ann. §47-25-101 (prohibiting "[a]ll arrangements, contracts,
         agreements, trusts, or combinations between persons or corporations… ."). *See also* Appendices I and

22        III.

23   [17] *See e.g., Cox v. Microsoft Corp.*, 737 N.Y.S.2d 1, 2 (N.Y. App. Div. 2002) ("Private persons are
         precluded from bringing a class action under the Donnelly Act… ."). *See also* Appendices I and III.

24   [18] *See, e.g., In re Microsoft Corp. Antitrust Litig.*, Nos. MDL 1332, 2003 U.S. Dist. LEXIS 15612, at * 7-8,

25        2003 WL 22070561, *2 (D. Md. Aug. 22, 2003) (dismissing Mississippi antitrust claims where plaintiffs
         failed to allege that monopoly was accomplished "by any transactions lying wholly within the state").
         *See also* Appendices I and III.

26   [19] *See, e.g.,* Iowa Code § 553.2 ("This chapter shall be construed to complement and be harmonized with

27        the applied laws of the United States which have the same or similar purpose as this chapter.").  *See also*
         Appendices I and III.

28

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    monopolization charge and the California Cartwright Act claim.  *Id.*  With respect to Count Six,

2    plaintiffs only seek to incorporate into the Complaint the state consumer protection statutes listed

3    if the Court does not apply California law to the purported nationwide class.  *Id.* ¶ 72.

4    Regardless, each of the state consumer protection claims set forth in Counts Three and Six fails

5    as a matter of law.

6        Plaintiffs summarize their consumer protection allegations as follows:  "[a]s a direct and

7    proximate result of Electronic Arts' unlawful conduct, class members in each of [the named]

8    states have been injured in that they paid more for interactive football software than they would

9    have but for the anticompetitive conduct alleged…."  Compl. ¶ 92.  Plaintiffs' alleged violations

10   of the consumer protection laws fail for two reasons:  first, plaintiffs have failed to state a

11   cognizable cause of action under the laws of California and the District of Columbia, the only

12   two consumer protection statutes under which they plausibly have standing to proceed; and

13   second, plaintiffs lack standing to pursue claims under the laws of the eighteen states where no

14   named plaintiffs resides.

15

16       **A.    Plaintiffs Fail to Allege the Necessary Elements of a Claim Under the
             Consumer Protection Statutes of California and the District of Columbia**

17       Plaintiffs' Third Cause of Action purports to allege a violation of the California Unfair

18   Competition Law (UCL), Cal. Bus. & Prof. Code § 17200.  Compl. ¶ 45.  Plaintiffs alleged

19   Section 17200 claim is expressly predicated on the alleged violations of the Sherman Act and the

20   Cartwright Act that comprise plaintiffs' First and Second causes of action.  *Id.*  Consequently,

21   plaintiffs' Section 17200 claim is limited—by its own terms—to the "unlawful" prong of that

22   statute.  Section 17200's unlawful prong borrows violations of other laws and treats them as

23   independently actionable under the UCL.  *See State Farm Fire & Cas. Co. v. Superior Court*, 45

24   Cal. App. 4th 1093, 1103 (1996).  It is hornbook law that where, as here, the complaint fails to

25   state a violation of an underlying law, the Section 17200 claim on which it is premised also fails.

26   *See, e.g., Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060

27   (2005) ("[I]f the [underlying] claim is dismissed, then there is no unlawful act upon which to

28   base the derivative Unfair Competition claim."); *Scripps Clinic v. Sup. Ct.*, 108 Cal. App. 4th

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

917, 938-939 (2003) (holding that the extinguishment of the borrowed violation extinguishes the UCL claim); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (holding that the viability of an "unlawful" UCL claim will "stand or fall depending on the fate of the" underlying claim).[20]  Several cases have applied this principle in the antitrust arena.  *See*, *e.g.*, *Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 866-67 (2001) (holding where a claim alleging conspiracy to violate the antitrust laws fails, it cannot be repled under the UCL).

Plaintiffs' allegation regarding Section 28-3904 of the District of Columbia Consumer Protection Procedures Act ("DCCPPA") also fails as a matter of law.  The DCCPPA covers a number unlawful trade practices that are specifically defined in the statute, as well as all "[t]rade practices that violate other laws, including the common law."  *Dist. Cablevision Ltd. P'shp v. Bassin*, 828 A.2d 714, 723 (D.C. 2003).  If the alleged violation is not one of DCCPPA's specifically enumerated unlawful trade practices—none of which are remotely relevant in this case—then the plaintiff must allege, at a minimum, a violation of some other law in order for DCCPPA to have any remaining relevance.  As such, any DCCPPA claims must be dismissed if plaintiffs fail to plead with specificity the enumerated practice or other legal violation necessary to trigger its application.  *See, e.g., Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1025 (D.C. 2007); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C. 2007) (dismissing plaintiff's DCCPPA claim on the ground that plaintiffs failed to allege facts to trigger liability under a separate, independent claim).  Further, this Court has held that, with regard to DCCPPA claims premised on alleged antirust violations, not all types of anticompetitive conduct fall within DCCPPA's purview.  To the contrary, the plaintiff must plead deceptive or unconscionable conduct in order to survive a motion to dismiss on such claims.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007) (noting that the mere allegation of price fixing is insufficient to trigger the "unconscionable conduct" element of DCCPPA, because "pleading unconscionability requires something more

---

[20]  In addition, it is well settled that California's UCL does not apply to actions occurring outside of California that injured non-residents.  *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222, 228 (1999); *Churchill Village v. General Electric*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1   than merely alleging that the price of a product was unfairly high.") (*citing Riggs Nat'l Bank of*

2   *Washington D.C. v. D.C.*, 581 A.2d 1229, 1251 (D.C. 1990)).  Here, plaintiffs' Complaint

3   contains no allegations in support of its alleged violation of the DCCPPA, let alone the requisite

4   allegations of deceptive or unconscionable conduct.  Compl. ¶ 75.  Accordingly, this claim fails

5   as a matter of law.

6

7   **B.    Plaintiffs Lack Standing to Assert Consumer Protection Claims under the Laws of the Eighteen States Where Neither Resides**

8   As indicated, the two plaintiffs named in the Complaint reside in California and the

9   District of Columbia.  Compl. ¶¶ 2-3.  As a matter of law, plaintiffs lack standing to pursue

10  claims under the other eighteen state consumer protection laws identified in the Complaint

11  because no named plaintiff resides in those states.  *In re Graphics Processing Units Antitrust*

12  *Litig.,* 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (granting motion to dismiss claims

13  brought under states' consumer protection and antitrust laws where no named plaintiff resided);

14  *see also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007); *In*

15  *re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-72 (S.D. Fla. 2001).

16  Plaintiffs' lack of standing to assert a consumer protection claim under the law of the

17  eighteen states where no plaintiff resides ends the inquiry for those state claims.  It bears

18  mentioning, however, that plaintiffs have failed to allege the necessary elements of a claim under

19  many, if not all, of the state UCL laws cited:

20  ▪ Plaintiffs have not alleged that EA has engaged in fraudulent or deceptive conduct, as
21    required by the state consumer protection laws in Maine, Nevada, New York, and Vermont.[21]

22  ▪ Plaintiffs have not alleged that EA has engaged in fraudulent or deceptive conduct, or
      an unconscionable trade practice as required by the consumer protection law in
23    Arkansas, the District of Columbia, Idaho, Kansas, New Mexico, and Utah.[22]

24  [21] *See, e.g.,* Me. Rev. Stat. Ann. tit. 5, § 207; Nev. Rev. Stat. §§ 598.0915-918 (prohibiting deceptive trade
25    practices, including making "false representations" and using "deceptive representations"); *Stutman v.
      Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (prevailing under N.Y. Gen. Bus. Law requires
26    proof that defendant engaged in a "deceptive practice" that is "likely to mislead a reasonable consumer
      acting reasonably under the circumstances").  *See also* Appendix II and IV.

27  [22] *See, e.g., In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)
28    (holding that the DCCPPA prohibits deceptive and unconscionable conduct in consumer transactions,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                          18                    DEFENDANT'S MOTION TO DISMISS
                                                CLASS ACTION COMPLAINT
                                                CASE NO. C-08-02820 VRW

- ▪ Plaintiffs fail to state a claim under the laws of Louisiana, New Mexico, and Rhode Island because those states' consumer protection laws bar consumer protection claims by indirect purchasers.[23]

- ▪ Plaintiffs fail to state a claim under the consumer protection laws of New Hampshire, North Carolina, and New York because those laws require predominately intrastate commerce to invoke their consumer protection acts.[24]

- ▪ Plaintiffs failed to comply with the statutory pre-filing notice requirements required under the consumer protection laws of Maine, Massachusetts, and West Virginia.[25]

- ▪ Plaintiffs have based their consumer protection claims solely upon their allegations that EA has violated antitrust laws. Under the consumer protection laws of California, Florida, Massachusetts, Nebraska, and New Hampshire, however, consumer protection claims based solely on alleged antitrust violations must be dismissed when the antitrust claim fails.[26]

- ▪ Plaintiffs' consumer protection claims fail under West Virginia and Rhode Island law, because those states' consumer protection laws do not provide causes of action for price restrictions and antitrust violations, respectively.[27]

- ▪ Plaintiffs' consumer protection claims under New York and Utah laws fail because

---

and that the plaintiff must plead deceptive or unconscionable conduct in order to survive a motion to dismiss); Kan. Rev. Stat. Ann. §§ 50-626, 50-627 (requiring that plaintiff prove a supplier "engage[d] in a deceptive act or practice in connection with a consumer transaction" or an "unconscionable act or practice in connection with a consumer transaction"). *See also* Appendix II and IV.

[23] *See, e.g., FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 7 (D.D.C. 1999) (refusing to permit Louisiana plaintiff to state a claim for damages on behalf of indirect purchasers because to do so "would provide an end run around the Fifth Circuit's decision in" *Free v. Abbott Labs.*, 176 F.3d 298 (5th Cir. 1999) (holding that under Louisiana law, indirect purchasers do not have standing to bring antitrust claims after *Illinois Brick*)). *See also* Appendix II and IV.

[24] *See, e.g., Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 504 (D.N.H. 1996) (holding that the use of the "within this state" language in the NHCPA "clearly indicates that the statute is only applicable if the offending conduct took place within the territorial borders of [New Hampshire]"); N.C. Gen. Stat. § 75-1, *et. seq.* (requiring that a plaintiff allege a substantial in-state injury). *See also* Appendix II and IV.

[25] *See, e.g.,* Me. Rev. Stat. Ann. tit. 5, § 213(1-A) (requiring "a written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered" at least thirty days before filing an action). *See also* Appendix II and IV.

[26] *See, e.g., Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2002) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."); *JES Props., Inc. v. USA Equestrian, Inc.*, No. 8:02-CV-1585-T-24MAP, 2005 U.S. Dist. LEXIS 43122, at *62-63, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005) (dismissing Florida consumer protection act claim because it was based on the same allegations as the antitrust claims and the court found no violation of the antitrust laws). *See also* Appendix II and IV.

[27] *See, e.g., In re Dynamic Random Access Memory ("DRAM") Antitrust Litig.*, 516 F. Supp. 2d 1072, 1118 (N.D. Cal. 2007); *ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997). *See also* Appendix II and IV.

---

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    those states' consumer protection laws bar class actions.[28]

2    **VI.    PLAINTIFFS' ATTEMPT TO BRING A NATIONWIDE CLASS ACTION**
3    **UNDER CALIFORNIA LAW FAILS THE SUPREME COURT'S *SHUTTS* TEST**

4          In their Second and Third Claims for Relief, plaintiffs purport to bring an action on

5    behalf of a nationwide class of indirect purchasers of "interactive football software" for

6    violations of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, and the Unfair Competition

7    Law (UCL), Cal. Bus. & Prof. Code § 17200.  Compl. ¶¶ 41-45.  (This is a thinly veiled attempt

8    to end-run the limitations of *Illinois Brick*.)  For the reasons discussed above, plaintiffs' Second

9    and Third Causes of Action fail as a matter of law.  Although the analysis can and should end

10   here, plaintiffs' attempt to bring a nationwide class under California law fails for an additional,

11   independent reason.

12         The Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985),

13   definitively forecloses plaintiffs' effort to use California law as a substitute for a nationwide

14   Sherman Act claim for damages.[29]  In *Shutts*, the Supreme Court held that the application of

15   Kansas law to the claims of plaintiffs in a nationwide class who were not from Kansas violated

16   the defendants' due process rights because (1) applying Kansas law would yield a different

17   outcome than would otherwise result if the nonresident plaintiffs brought their claims in their

18   states of residence, and (2) the absence of the non-resident plaintiffs' connection to Kansas

19   meant the parties had no reason to believe that Kansas law would control their conduct.  *Id.* at

20   816-18,  822-23.  Thus, before a nationwide class can invoke the law of a particular state under

21   *Shutts*, the state's law must both (1) not conflict with the law of another jurisdiction that has an

22

23   [28]  *See, e.g., Cunningham v. Bayer AG,* N.Y. Sup. Ct. Index No. *603820/00,* at 13 (Oct. 15, 2003), *aff'd* 804
     N.Y.S.2d 924 (N.Y. App. Div. 2005); Utah Code § 13-11-19(4)(a).  *See also* Appendix II and IV.

24   [29]  Therefore, this Court should strike any references to the purported "nationwide class" that plaintiffs seek
25   to represent under the Cartwright Act and the UCL from the Complaint.  *Canon U.S.A., Inc. v. Superior
     Court,* 79 Cal. Rptr. 2d 897, 900 (Cal. Ct. App. 1998) (reversing denial of motion to strike references to
26   a nationwide class at the pleading stage because "where the invalidity of the class allegations is revealed
     on the face of the complaint, and/or by matters subject to judicial notice, the class issue may be properly
27   disposed of by demurrer or motion to strike."); *Util. Consumers' Action Network v. Powernet Global
     Commc'ns*, No. 06-1773, 2006 U.S. Dist LEXIS 78546, at *2 (S.D. Cal. Oct. 20, 2006) (same).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    interest in the case, and (2) "have a significant contact or significant aggregation of contacts" to

2    the claims asserted by each member of the plaintiff class, "contacts creating state interests," in

3    order to ensure that the choice of the forum state's law "is neither arbitrary nor unfair." *Id.* at

4    818. Plaintiffs' Complaint fails on both scores.

5         First, the application of California law to claims brought by California nonresidents

6    nationwide would pose dramatic conflicts.[30] In stark contrast to California law, the antitrust

7    laws of *more than half* of all states preclude indirect purchasers from bringing a private claim.[31]

8    To allow residents of these states to nevertheless seek damages from defendants under

9    California's Cartwright Act where they did not live in California or buy their product in

10   California would directly subvert the laws of the states in which they reside. *In re Graphics*

11   *Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011 (N.D. Cal. 2007) is squarely on point. In

12   *In re Graphics*, this court granted a motion to strike "all references to a nationwide class in

13   indirect purchaser's claims under California's Cartwright Act and California's unfair-

14   competition law." *Id.* at 1028. Although the complaint purported to name a nationwide class,

15   the court held that under *Shutts,* application of California law to a nationwide class was

16   unconstitutional. *Id.* at 1027-28. The court reasoned, in part, that although California allowed

17   suits by indirect purchasers, application of California's antitrust law would conflict with the laws

18   of states that do not. *Id.*[32]

---

19   [30]  In ruling on plaintiffs' state law claims, this Court follows the rulings of the respective states' highest

20   appellate courts. *See, e.g., Johnson v. Fankell*, 520 U.S. 911, 916 (1997) (noting that no federal court
     "has any authority to place a construction on a state statute different from the one rendered by the

21   highest court of the State."). In the absence of a controlling decision by the state's highest court, the
     Court must also follow the holdings of a state's appellate court if those decisions are binding on all state

22   trial courts. *See Gooding v. Wilson*, 405 U.S. 518, 525-26 n.3 (1972). Where the controlling courts in a
     state have not yet ruled on an issue—or where their rulings are ambiguous—the Court "must predict

23   how the highest state court would decide the issue . . . ." *S.D. Myers, Inc. v. County of San Francisco*,
     253 F.3d 461, 473 (9th Cir. 2001).

24   [31]  Alaska, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky,
     Louisiana, Maryland, Massachusetts, Missouri, Montana, New Hampshire, New Jersey, New York,

25   Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Vermont, Virginia,
     Washington and Wyoming do not allow indirect purchasers to bring private suits under the state antitrust

26   laws. ABA Section of Antitrust Law, *Indirect Purchaser Litigation Handbook* 305-341 (2007).

27   [32]  *See also St. Paul v. FMC Corp.*, No. 89-0466, 1990 U.S. Dist. LEXIS 18142, at *3, 1990 WL
     265171, at *1 (D. Minn. Feb. 26, 1990) (granting motion to limit class allegations of an indirect

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    Second, plaintiffs fail to plead sufficient facts to show "significant" contacts with

2 California such that application of California law to nonresidents would not be arbitrary or

3 unfair.  Again, *In re Graphics* is squarely on point.  In striking the purported nationwide class,

4 the court reasoned:  "It is hard to see why the laws of other sates should be tossed overboard and

5 their residents remitted to California law for transaction that, for individual consumers, are local

6 in nature."  *Id*. at 1028.  In this respect, *Util. Consumers' Action Network v. Powernet Global*

7 *Commc'n*, No. 06-1773, 2006 U.S. Dist LEXIS 78546, at *16 (S.D. Cal. Oct. 20, 2006), is also

8 instructive.  There, a putative nationwide class of plaintiffs alleged, among other things,

9 violations of California's Business and Professions Code in conjunction with overcharges that

10 appeared on their long distance communications bills.  *Id.* at *2-5.  Defendants moved to strike

11 the nationwide class allegations on the grounds that plaintiffs lacked sufficient contacts with

12 California.  *Id*. at *15-16.  The court agreed.  The court determined that "[a]pplying the forum

13 state's laws to parties located beyond the state's borders, who have no relationship with the

14 forum state, would abrogate the parties' rights under the Due Process and Full Faith and Credit

15 Clauses."  *Id.* at *16 (citing *Shutts*, 472 U.S. at 822).

16    The same result is required here.  Plaintiffs do not allege that each member of the

17 purported nationwide class has a sufficient contact to California to permit them to invoke

18 California law.  Moreover, the Complaint does not allege that the non-California plaintiffs

19 actually bought "interactive football software" in California, nor does it allege that they ever

20 agreed to be bound by California law.  *See Shutts*, 472 U.S. at 822 (noting that in considering

21 fairness, an important element is the expectation of the parties).  In fact, for the portion of the

22 class that does not reside in California and allegedly bought "interactive football software"

23 manufactured by EA, plaintiffs do not plead that they had *any contact with California*, let alone a

24 "significant contact" with California.  *See Shutts*, 472 U.S. at 799, 822-23 (refusing to allow

25 class to proceed under Kansas law where defendant was headquartered in Delaware, plaintiffs

26
        purchaser complaint to cover residents of Minnesota only; holding that although the complaint named
27      a nationwide class, application of Minnesota antitrust law to a nationwide class was unconstitutional
        under *Shutts*).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1   were spread out nationwide, and there was no evidence that when plaintiffs executed leases they

2   intended to be bound by Kansas law).

3          Plaintiffs unpersuasively attempt to conceal the absence of "substantial contacts" with a

4   handful of conclusory allegations.  Specifically, plaintiffs broadly allege that "the unlawful

5   course of conduct … was created, adopted, ratified and/or implemented in the corporate

6   headquarters of Electronic Arts located in Redwood City, California.  Upon information and

7   belief, the Electronic Arts executives responsible for the series of anticompetitive agreements

8   outlined above are based in California and a substantial part, if not all, the anticompetitive

9   conduct took place in California."  Compl. ¶ 19.  These conclusory allegations are

10  indistinguishable from those made and rejected in *In re Graphics* and *Util. Consumers' Action*

11  *Network*.

12         Accordingly, this Court must dismiss plaintiffs' allegations that purport to bring a

13  nationwide class action under California law.  A decision to the contrary would not only render

14  the substantive policy decisions made by the majority of the remaining forty-nine states and the

15  District of Columbia ineffectual, but would create tremendous incentives for prospective indirect

16  purchaser plaintiffs to forum shop for the most favorable law.  The law, however, prohibits this

17  outcome.

18
19  **VII.   PLAINTIFFS' FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT IS
        IMPROPER AND MUST BE DISMISSED**

20         There is no cause of action in California for "unjust enrichment."  The California

21  appellate courts have expressly held that "[u]njust enrichment is not a cause of action… or even

22  a remedy, but rather a general principle, underlying various legal doctrines and remedies….  It is

23  synonymous with restitution."  *McBride v. Boughton,* 123 Cal. App. 4th 379, 388 (2004); *see*

24  *also Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no

25  cause of action in California for unjust enrichment.  The phrase 'unjust enrichment' does not

26  describe a theory of recovery, but an effect: the result of a failure to make restitution under

27  circumstances where it is equitable to do so.").  Here, plaintiffs have not alleged any misconduct

28  besides that which purportedly forms the basis for their antitrust and consumer protection claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. C-08-02820 VRW

1    Accordingly, the Fourth Cause of Action is simply a prayer for restitution, not an independent

2    claim for relief that is not available pursuant to plaintiffs' statutory claims. As such it is

3    complete surplusage and must be dismissed. Moreover, plaintiffs cannot seek restitution from

4    EA—under any theory—because they have not conferred a direct and immediate benefit on EA,

5    as they did not purchase EA's *Madden NFL* game directly from EA. *See*, *e.g.*, *Korea Supply Co.*

6    *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (holding restitution under California

7    law is limited to either "money or property that defendants took directly from plaintiff" or

8    "money or property in which [the plaintiff] has a vested interest.").

9    **VIII.   CONCLUSION**

10           For the reasons stated above, the Court should dismiss plaintiffs' Complaint with

11    prejudice.

12

13    Dated:  August 25, 2008                        Respectfully Submitted,

14                                                   LATHAM & WATKINS LLP
                                                        Daniel M. Wall
15                                                      Timothy L. O'Mara

16

17                                                 By _____/s/ Daniel M. Wall_____
                                                        Daniel M. Wall
18                                                      Attorneys for Defendant
                                                        ELECTRONIC ARTS INC.
19

20    SF\668092

21

22

23

24

25

26

27

28

24

# APPENDIX I

| | Fails to State A Claim Under *Twombly* | No Standing | Requires Predominantly Intrastate Activity | Fails to State a Claim Because State Antitrust Statute Requires Concerted Action | No Appreciable Difference with Section 2 Sherman Act | Bars Class Actions |
|---|---|---|---|---|---|---|
| **Appendix I: Summary of Defendant's Arguments for Dismissal of Plaintiffs' State Antitrust Claims** | | | | | | |
| Arizona | X | X | | | X | |
| California | X | | | X | | |
| District of Columbia | X | | | | X | |
| Iowa | X | X | | | X | |
| Kansas | X | X | | X | | |
| Maine | X | X | | | X | |
| Michigan | X | X | | | X | |
| Minnesota | X | X | | | | |
| Mississippi | X | X | X | | | |
| Nebraska | X | X | | | X | |
| Nevada | X | X | X | | | |
| New Mexico | X | X | | | X | |
| New York | X | X | | X | | X |
| North Carolina | X | X | | | | |
| North Dakota | X | X | | | X | |
| South Dakota | X | X | X | | X | |
| Tennessee | X | X | X | X | | |
| Vermont | X | X | | | X | |
| West Virginia | X | X | | | X | |
| Wisconsin | X | X | X | | X | |

# APPENDIX II

| Appendix II: Summary of Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | No Standing | Bars Consumer Protection Claims by Indirect Purchasers | Requires Fraudulent or Deceptive Conduct or Unconscionable Trade Practices | Requires Fraudulent or Deceptive Conduct | Requires Predomin-antly Intrastate Commerce | Requires Pre-Filing Notice | Bars Claims Based Solely on Antitrust Violations when Antitrust Claim Fails | Does Not Provide Causes of Action for Price Fixing and/or Antitrust Violations | Bars Class Actions |
| Alaska | X | | | | | | | | X |
| Arkansas | X | | X | | | | | | |
| California | | | | | | | X | | |
| District of Columbia | | | X | | | | | | |
| Florida | X | | | | | | X | | |
| Idaho | X | | X | | | | | | |
| Kansas | X | | X | | | | | | |
| Louisiana | X | X | | | | | | | X |
| Maine | X | | | X | | X | | | |
| Massachusetts | X | | | | | X | X | | |
| Nebraska | X | | | | | | X | | |
| Nevada | X | | | X | | | | | |
| New Hampshire | X | | | | X | | X | | |
| New Mexico | X | X | X | | | | | | |
| New York | X | | | X | X | | | | X |
| North Carolina | X | | | | X | | | | |
| Rhode Island | X | X | | | | | | X | |
| Utah | X | | X | | | | | | X |
| Vermont | X | | | X | | | | | |
| West Virginia | X | | | | | X | | X | |

# APPENDIX III

| **Appendix III: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Antitrust Law Claims** | |
|---|---|
| **Arizona** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Ariz. Rev. Stat. § 44-1412 (2008) ("It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes."); *Brooks Fiber Communications v. GST Tucson Lightwave*, 992 F. Supp. 1124, 1130 (D. Ariz. 1997) (explaining that the Arizona Antitrust Act "mirrors federal antitrust law."). |
| **California** | <u>Requires Concerted Action</u>:  Cal. Bus. & Prof. Code §§ 16720, 16726 (2008) (providing that, under the California antitrust statute, plaintiff must allege a "combination"); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (holding that a challenge to unilateral conduct is not cognizable under California's Cartwright Act because it does not involve a combination). |
| **District of Columbia** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  D.C. Code Ann. § 28-4515 (2008) (courts "may use as a guide interpretations given by federal courts to comparable antitrust statutes."); *WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245 (D.D.C. 2007) (holding that since defendants have not sufficiently alleged a violation of Section 1 of the Sherman Act in their counterclaims, they also fail to state a claim under D.C. law). |
| **Iowa** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Iowa Code § 553.2 (2008) ("This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter."). |
| **Kansas** | <u>Requires Concerted Action</u>:  Kan. Stat. Ann. § 50-132 (2007) (prohibiting combinations and conspiracies only). |
| **Maine** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  *Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000) ("We have noted that the 'Maine antitrust statutes parallel the Sherman Act,' and thus have analyzed claims thereunder according to the doctrines developed in relation to federal law."); *Tri-State Rubbish, Inc. v. Waste Management, Inc.,* 998 F.2d 1073, 1081 (1st Cir. 1993)."). |
| **Michigan** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Mich. Comp. Laws Ann. § 445.784(2) (2008) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and rule of reason."); *First Med Reps., LLC v. Futura Med. Corp.*, 195 F. Supp. 2d 917, 922 (E.D. Mich. 2002) ("[B]ecause Michigan courts apply Sherman Act analysis to the MARA, the following analysis applies … [equally to] the allegations of both state and federal antitrust violations."). |

| Appendix III: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Antitrust Law Claims | |
|---|---|
| **Mississippi** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  *Walker v. U-Haul of Mississippi*, 734 F.2d 1068, 1070 n.5 (5th Cir. 1984) (treating Mississippi and federal antitrust claims as "analytically identical"). <br><br> <u>Requires Predominantly Intrastate Activity</u>:  *Standard Oil Co. of Kentucky v. State*, 65 So. 468, 471 (Miss. 1914) ("[A] conspiracy to monopolize trade in any commodity to be punishable under state laws must have as one of its objects a monopoly in the intrastate trade therein to be accomplished in part at least by transactions which are also wholly intrastate."), *overruled in part on other grounds sub nom. Mlandinic v. Kohn*, 164 So. 2d 785 (Miss. 1964).  *See also In re Microsoft Corp. Antitrust Litig*., Nos. MDL 1332, 2003 U.S. Dist. LEXIS 15612, at * 7-8, 2003 WL 22070561, *2 (D. Md. Aug. 22, 2003) (dismissing Mississippi antitrust claims where plaintiffs failed to allege that monopoly was accomplished "by any transactions 'lying wholly within the state'"). |
| **Nebraska** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Neb. Rev. Stat § 59-829 (2007) ("When any provision … is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts."). |
| **Nevada** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Nev. Rev. Stat § 598A.050 (2007) ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."); *Boulware v. State*, 960 F.2d 793, 800 (9th Cir. 1992) ("Nevada Unfair Trade Practices Act … tracks the provisions of the Sherman Act.  The Nevada statute also adopts by reference the case law applicable to the federal antitrust statutes."). <br><br> <u>Requires Predominantly Intrastate Activity</u>:  Nevada's Antitrust Act states that "it is unlawful to conduct any part of [a conspiracy in restraint of trade] in this state."  Nev. Rev. Stat. Ann. § 598A.060(1) (2007). |
| **New Mexico** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  N.M. Stat. Ann. 1978, § 57-1-15 (2008) ("[T]he Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices."). |
| **New York** | <u>Requires Concerted Action</u>:  *George Miller Brick Co., Inc. v. Stark Ceramics, Inc.*, 801 N.Y.S.2d 120, 155-56 (N.Y. Sup. Ct. 2005) ("Neither the Sherman Act nor the Donnelly Act proscribe independent action… ." (citing *State v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464 (N.Y. 1976) ("[A] one-sided practice … is outside the scope of the [Donnelly Act]"))). |

| Appendix III:  Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Antitrust Law Claims | |
|---|---|
| | Bars Class Action:  *In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1107-08 (N.D. Cal. 2007) (holding that New York law does not permit private class actions under the Donnelly Act); *Cox v. Microsoft Corp.*, 737 N.Y.S.2d 1, 2 (N.Y. App. Div. 2002) ("Private persons are precluded from bringing a class action under the Donnelly Act ... because the treble damages remedy provided for in subsection 5 constitutes a 'penalty' within the meaning of CPLR 901(b)," and the Donnelly Act "does not specifically authorize recovery in a class action...."), *superseded by rule on other grounds Westerfield v. Washington Mut. Bank*, No. 06-2817, 2007 U.S. Dist. LEXIS 54830, 2007 WL 2162989 (E.D.N.Y. Jul. 26, 2007); *Asher v. Abbott Labs.,* 737 N.Y.S.2d 4, 4 (N.Y. App. Div. 2002) (same); *Leider v. Ralfe*, 387 F.Supp.2d 283, 288 (S.D.N.Y. 2005) (same). |
| **North Dakota** | No Appreciable Difference with § 2 Sherman Act:  N.D. Cent. Code § 51-08.1-03 (2007) ("The establishment, maintenance, or use of a monopoly, or an attempt to establish a monopoly, of trade or commerce in a relevant market by any person, for the purpose of excluding competition or controlling, fixing, or maintaining prices, is unlawful."). |
| **South Dakota** | No Appreciable Difference with § 2 Sherman Act:  S.D. Codified Laws § 37-1-22 (2008) ("It is the intent of the Legislature that in construing this chapter, the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes."); *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985) ("[B]ecause of the similarity of language between the federal and state antitrust statutes and because of the legislative suggestion for interpretation found in SDCL 37-1-22, great weight should be given to the federal cases interpreting the federal statute.").<br><br>Requires Predominantly Intrastate Activity:  In South Dakota, "[a] contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state is unlawful."  S.D. Codified Laws § 37-1-3.1 (2008). |
| **Tennessee** | Requires Concerted Action:  Tenn. Code. Ann. § 47-25-101 (2008) (prohibiting "all arrangements, contracts, agreements, trusts, or combinations between persons or corporations… ."); *see also In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1108-09 (N.D. Cal. 2007) (holding that Tennessee Trade Practices Act does not apply to unilateral conduct).<br><br>Requires Predominantly Intrastate Activity:  *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (upholding dismissal of a non-resident plaintiff's claims that defendants fixed the price of sorbates because "Freeman fails to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct |

| | **Appendix III: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Antitrust Law Claims** |
|---|---|
| | resulted in Freeman paying higher prices to retailers for items containing sorbates."). |
| **Vermont** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  Vt. Stat. Ann. tit. 9, § 2453 (2008) ("It is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States."). |
| **West Virginia** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  W. Va. Code § 47-18-16 (2008) ("This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes."). |
| **Wisconsin** | <u>No Appreciable Difference with § 2 Sherman Act</u>:  *Grams v. Boss*, 97 Wis. 2d 332, 346 (Wis. 1980) ("We have repeatedly stated that sec. 133.01, Stats., was intended as a reenactment of the first two sections of the federal Sherman Antitrust Act of 1890, 15 USC secs. 1 and 2… ."). <br><br> <u>Requires Predominantly Intrastate Activity</u>:  *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) ("A civil plaintiff filing an action under Wisconsin's antitrust act must allege that … the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."). |

APPENDIX IV

| Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims | |
|---|---|
| **Alaska** | Bars Consumer Class Actions:  *In re Pharm. Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61, 74-75 (D. Mass. 2005) ("Under the law[] of … Alaska … there is no right to bring a class action to enforce the consumer protection statutes.  See … Alaska Stat. § 45.50.531 (b) (repealed provision that had allowed class actions)."). |
| **Arkansas** | Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim:  Arkansas' Deceptive Trade Practices Act ("ADTPA") prohibits "deceptive and unconscionable trade practices," including but not limited to 11 enumerated categories, Ark. Code § 4-88-107 (2008), such as "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce or trade," *Id.* § 4-88-107(10).  The ADTPA also prohibits the concealment, suppression, or omission of material facts, and makes the following unlawful when "utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation": "(1) [t]he act, use, or employment by any person of any deception, fraud, or false pretense; or (2) [t]he concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." *Id.* § 4-88-108.  *See also In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-30 (N.D. Cal. 2007) (holding "in … [Arkansas], pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high," and that plaintiffs must "plead[] the kind of grossly unequal bargaining power prohibited by the[] statute[]."). |
| **California** | Bars Consumers Protection Claims Based Solely on Alleged Antitrust Violations When the Antitrust Claim Fails as a Matter of Law:  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2002) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."); *see also Korea Kumho Petrochemical v. Flexsys Am. LP*, No. C07-01057, 2007 U.S. Dist. LEXIS 61373, at *17, 2007 WL 2318906, at * 4 (N.D. Cal. Aug. 4, 2007) (holding that "[p]laintiff's failure to plead a cognizable antitrust injury also requires dismissal of Plaintiff's Section 17200 [consumer protection] claim as well," because "[p]laintiff has identified no alleged unlawfulness beyond Defendants' alleged antitrust violations."). |
| **District of Columbia** | Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim:  The District of Columbia's Consumer Protection Procedures Act ("DCCPPA") lists 32 categories of "unlawful trade practices," most of which involve deceptive conduct, but also includes "(r) [to] make or enforce unconscionable terms or provisions of sales |

| | **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** |
|---|---|
| | or leases; in applying this subsection, consideration shall be given to the following. … (3) gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees[.]"  D.C. Code § 28-3904 (2008).  *See also Alicke* v. *MCI Commc'ns. Corp.,* 111 F.3d 909, 912 (D.C. Cir. 1997) (dismissing DCCPPA claim based on method of pricing cellular service because of absence of actionable misrepresentation; "to state a claim based upon [one of the deceptive conduct prongs of the unfair trade practice statute], the plaintiff must allege that the defendant made a material misrepresentation or omission that has a tendency to mislead.");  *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007) (holding that the DCCPPA prohibits deceptive and unconscionable conduct in consumer transactions, and that the plaintiff must plead deceptive or unconscionable conduct in order to survive a motion to dismiss). |
| **Florida** | <u>Bars Consumers Protection Claims Based Solely on Alleged Antitrust Violations When the Antitrust Claim Fails as a Matter of Law</u>: *JES Props., Inc. v. USA Equestrian, Inc*., No. 8:02-CV-1585-T-24MAP, 2005 U.S. Dist. LEXIS 43122, at *62-63, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005) (dismissing Florida consumer protection act claim because it was based on the same allegations as the antitrust claims and the court found no violation of the antitrust laws); *see also Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d 1269, 1286 (M.D. Fla. 2002) (same). |
| **Idaho** | <u>Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim</u>:  Idaho's Consumer Protection Act ("ICPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Idaho Code § 48-603 (2008).  Of the 19 types of bad acts listed in section 603, only two are relevant here:  (1) knowingly "engaging in any act or practice which is otherwise misleading, false or deceptive to the consumer" or (2) "engaging in any unconscionable method, act or practice in the conduct of trade or commerce...."  *Id.* §§ 48-603(17), (18).  *See also, State ex rel. Kidwell* v. *Master Distributors, Inc.,* 615 P.2d 116, 122-123 (1980) (explaining that a claim for "unfair" acts or practices requires plaintiff to show that the acts or practices "possess a tendency or capacity to deceive consumers"); *In re Wiggins,* 273 B.R. 839, 860-72 (Bankr. D. Idaho 2001) (stating factors considered to determine whether there was "unconscionable" conduct include (1) whether the plaintiff could reasonably protect his interests; (2) whether the defendant knew that the plaintiff could not reasonably protect his interests; (3) whether the action taken was grossly excessive or unfair; (4) whether the transaction at issue was excessively one sided; and (5) whether the defendant's pattern of conduct outraged or offended the public conscience). |

| | |
|---|---|
| **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** | |
| **Kansas** | Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim: Kan. Stat. Ann. §§ 50-626, 50-627 (2007) (requiring Plaintiff prove a supplier "engage[d] in any deceptive act or practice in connection with a consumer transaction" or an "unconscionable act or practice in connection with a consumer transaction"); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-30 (N.D. Cal. 2007) (holding that "in … [Kansas], pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high," and that plaintiffs must "plead[] the kind of grossly unequal bargaining power prohibited by the[] statute[].") |
| **Louisiana** | Indirect Purchasers Lack Standing: *FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 7 (D.D.C. 1999) (refusing to permit Louisiana plaintiff to state a claim for damages on behalf of indirect purchasers because to do so "would provide an end run around the Fifth Circuit's decision in" *Free v. Abbott Labs.*, 176 F.3d 298 (5th Cir. 1999) (holding that under Louisiana law, indirect purchasers do not have standing to bring antitrust claims after *Illinois Brick*)).<br><br>Bars Consumer Class Actions: *Morris v. Sears, Roebuck & Co.*, 765 So. 2d 419 (La. App. 2000) ("The Louisiana Unfair Trade Practices Act (LUPTA), R.S. 51:1401, et seq., expressly prohibits a private class action."); se*e also In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 74-75 (D. Mass. 2005) (Under the law[] of … Louisiana … there is no right to bring a class action to enforce the consumer protection statutes. See … La. Rev. Stat. Ann. § 51:1409(A).") |
| **Maine** | Requires Fraudulent or Deceptive Conduct to Support a Consumer Protection Claim: Maine's Unfair Trade Practices Act ("MUTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207 (2008). *See also Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998) (stating, in finding no violation of the MUTPA in photographer's pricing practice, that "[i]n pricing cases under [MUTPA] the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase"; holding that finding photographer's practice of offering certain school portrait packages at price 20% higher did not "operate to induce consumers to purchase photos they would not otherwise purchase" and therefore did not violate MUTPA); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1031 (N.D. Cal. 2007) (" [In] pricing cases under the [Maine] Act the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase." Since it "simply [did] not make sense" that plaintiffs were induced |

3

| | **Appendix  IV:  Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** |
|---|---|
| | into purchasing the product due to the higher prices resulting from the price fixing conspiracy, the motion to dismiss the claim was granted.). |
| | Requires Written Notice to Defendant Prior to the Filing of a Consumer Protection Claim:  Me. Rev. Stat. Ann. tit. 5, § 213(I-A) (2008) ("At least 30 days prior to the filing of an action for damages, a written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered, must be mailed or delivered to any prospective respondent at the respondent's last known address."). |
| **Massachusetts** | Requires Written Notice to Defendant Prior to the Filing of a Consumer Protection Claim:  Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to the filing of any such action [under c. 93A by a private person not engaged in business], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.").  *See also York* v. *Sullivan,* 338 N.E.2d 341, 346-47 (Mass. 1975) ("The failure of the City to allege the sending of a demand letter is fatal to its [chapter 93A] claim."); *Spring v. Geriatric Auth. of Holyoke,* 475 N.E.2d 727, 735-36 (Mass. 1985); *Entrialgo* v. *Twin City Dodge, Inc.,* 333 N.E.2d 202, 204 (Mass. 1975). |
| | Bars Consumers Protection Claims Based Solely on Alleged Antitrust Violations When the Antitrust Claim Fails as a Matter of Law:  *Elfman & Son, Inc. v. Criterion Mills, Inc*., 774 F. Supp. 683, 687 (D. Mass. 1991) ("A § 93A claim must fail, however, if the antitrust and contract claims fail."); *J.H. Westerbeke Corp. v. Onan Corp.*, 580 F. Supp. 1173, 1192 (D. Mass. 1984) (same). |
| **Nebraska** | Bars Consumers Protection Claims Based Solely on Alleged Antitrust Violations When the Antitrust Claim Fails as a Matter of Law:  *Triple 7, Inc. v. Intervet, Inc*., 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) (holding that "[p]laintiff has failed to state a claim under the [Nebraska] CPA for the same reasons discussed in connection with its Sherman Antitrust Act claim."). |
| **Nevada** | Requires Fraudulent or Deceptive Conduct to Support a Consumer Protection Claim:  Nev. Rev. Stat. §§ 598.0915-918 (2007) (prohibiting deceptive trade practices, including making "false representations" and using "deceptive representations"). |
| **New Hampshire** | Requires Predominantly Intrastate Conduct to Invoke Its Consumer Protection Law:  New Hampshire's Consumer Protection Act ("NHCPA") provides that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state ...."  N.H. Rev. Stat. Ann. § 358-A:2 (2008).  *See* |

| | |
|---|---|
| | **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** |

| | |
|---|---|
| | *also Pacamor Bearings, Inc. v. Minebea Co.,* 918 F. Supp. 491, 504 (D.N.H. 1996) (holding that the use of the "within this state" language in the NHCPA "clearly indicates that the statute is only applicable if the offending conduct took place within the territorial borders of [New Hampshire]"); *Mueller Co. v. United States Pipe & Foundry Co.,* No.03-170-JD, 2003 U.S. Dist. LEXIS 17448, at *18-19, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) (dismissing NHCPA claim, and holding that "commercial conduct which affects the people of New Hampshire is actionable under section 358-A:2 only if it occurs within New Hampshire."); *Environamics Corp. v. Ferguson Enters.,* No.00-579-JD, 2001 U.S. Dist. LEXIS 25481, at *10, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001) ("The limitation in RSA 358-A:2 to 'conduct of any trade or commerce within this state' has been interpreted to mean that the statute only applies to offending conduct that took place within New Hampshire.").<br><br>Bars Consumers Protection Claims Based Solely on Alleged Antitrust Violations When the Antitrust Claim Fails as a Matter of Law: *Davis Frame Co., Inc. v. Reilly,* No. 05-CV-160-SM, 2006 U.S. Dist. LEXIS 6754, at *17, 2006 WL 435454, at *6-7 (D.N.H. Feb. 22, 2006) (dismissing New Hampshire Consumer Protection Act claim in part because the defendant was not liable for unlawful tying, and that theory could not serve as the basis for a CPA claim); *see also Dennis v. Husqvarna Forest & Garden Co.*, No. 94-309-M, 1994 U.S. Dist. LEXIS 18658, at *16, 1994 WL 759187, at *6-7 (D.N.H. Dec. 27, 1994) (same). |
| **New Mexico** | Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim: New Mexico's Unfair Practices Act ("NMUPA") prohibits: (1) "unfair or deceptive trade practices," defined to include any "act specifically declared unlawful pursuant to the Unfair Practices Act [5712-1 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person"; and (2) "unconscionable trade practices," defined to include any practice that either "(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the paid."  N.M. Stat. Ann. § 57-12-2 (2008); *id.* § 57-12-3.  *See also Thompson v. Youart,* 787 P.2d 1255, 1259 (1990) (holding that a claim for unfair and deceptive actions requires: "(1) a false or misleading representation (2) knowingly made (3) in connection with the sale of goods or services (4) in the regular course of trade or commerce (5) which may, tends to, or does deceive or mislead any person."); *Guthman* v. *La Vida,* 709 P.2d |

| | |
|---|---|
| **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** | |

| | |
|---|---|
| | 675, 680 (1985) (under New Mexico contract law, unconscionability requires terms that are "extreme ... according to the mores and business practices of the time and place"); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-30 (N.D. Cal. 2007) (holding "in … [New Mexico], pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high," and that plaintiffs must "plead[] the kind of grossly unequal bargaining power prohibited by the[] statute[]."). |
| | <u>Indirect Purchasers Lack Standing</u>:  New Mexico's Unfair Trade Practices Act provides that "[a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act [57-12-1 NMSA 1978] may bring an action...." N.M. Stat. Ann. § 57-12-10(B) (2008). *See also Marchman v. NCNB Texas Nat'l Bank,* 898 P.2d 709, 715-19 (N.M. 1995) (holding that indirect purchasers have no standing to bring claims); *Delta Automatic Sys., Inc. v. Bingham,* 974 P.2d 1174, 1177 (N.M. Ct. App. 1998) ("An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer for relief."). |
| **New York** | <u>Requires Fraudulent or Deceptive Conduct to Support a Consumer Protection Claim</u>:  New York law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a) (2008).  *See also Stutman v. Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (prevailing under § 349 requires proof that defendant engaged in a "deceptive practice" that is "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000) (describing proof of a deceptive act as an essential element of a claim under § 349); *Gaidon v. Guardian Life Ins. Co. of Am.,* 725 N.E.2d 330, 344 (N.Y. 1999) (same); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA.,* 647 N.E.2d 741, 744 (N.Y. 1995) (same). |
| | <u>Requires Predominantly Intrastate Conduct to Invoke Its Consumer Protection Law</u>:  New York law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a) (2008) (emphasis added).  *See also Goshen v. Mut. Life Ins. Co.,* 774 N.E.2d 1190, 1195 (N.Y. 2002) (affirming order dismissing action, and holding that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York" and that "[t]o apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349."); *Murrin v. Ford Motor Co.,* 303 A.D.2d 475, 477,  (N.Y. App. Div. 2003) |

| | |
|---|---|
| **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** | |
| | (affirming dismissal, holding that "[t]he plaintiff also did not adequately plead a cause of action alleging a violation of General Business Law § 349, since he failed to allege that the deceptive acts complained of took place within the State of New York."). |
| | Bars Consumer Class Actions: *Paltre v. General Motors Corp. et al.,* N.Y. Sup. Ct. Index No. 005014/2003, (April 21, 2004 Order at 15-17) (Ex. E) (dismissing consumer protection act claims in complaint virtually identical to the instant case, when gravamen of plaintiffs' complaint was the defendants violated antitrust laws, and allowing plaintiffs to bring antitrust class actions under the consumer protection act would improperly subvert the ban on class actions under New York's antitrust act), *aff'd,* 26 A.D.3d 481 (N.Y. App. Div. 2006). |
| **North Carolina** | Requires Predominantly Intrastate Conduct to Invoke Its Consumer Protection Law: N.C. Gen. Stat. § 75-1 (2008), *et. seq.*, requires that a plaintiff allege a substantial in-state injury. *See The 'In' Porters v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (dismissing plaintiff's Unfair Trade Practices Act claim because alleged conduct "lack[ed] substantial North Carolina effects"); *see also Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (explaining that the extraterritorial reach of the UTPA is limited to actions having "a substantial effect on a [plaintiff's] in-state business operations") (citing *The 'In' Porters*). |
| **Rhode Island** | Indirect Purchasers Lack Standing: Rhode Island's Antitrust Act which squarely precludes claims by indirect purchasers. *See Siena v. Microsoft Corp.,* 796 A.2d 461, 464-65 (R.I. 2002); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1030 (N.D. Cal. 2007) ("Rhode Island does not permit state-law antitrust claims by indirect purchasers."). |
| | Does Not Provide a Cause of Action for Antitrust Violations Under Its Consumer Protection Law: The Supreme Court of Rhode Island has held that the Rhode Island Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-2 (2007), does not provide a cause of action for antitrust violations. *See ERI Max Entertainment, Inc. v. Streisand,* 690 A.2d 1351 (R.I. 1997) (dismissing plaintiff's claims under the Rhode Island antitrust act and deceptive trade practices act, which were based on allegations that defendants engaged in a civil conspiracy by entering exclusive agreement to distribute videotape only in Blockbuster video stores, because "the behavior complained of does not meet the definition of '[u]nfair methods of competition and unfair or deceptive trade practices' set forth in sec. 6-13.1-1 (5) of the [Deceptive Trade Practices] act."); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1029-30 (N.D. Cal. 2007) (dismissing plaintiffs' Rhode Island consumer protection law claims in part due to the fact that "Rhode |

| | |
|---|---|
| | **Appendix IV: Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** |
| | Island's unfair competition statute has been interpreted to foreclose claims based on antitrust violations."). |
| **Utah** | <u>Requires Fraudulent or Deceptive Conduct or an Unconscionable Trade Practice to Support a Consumer Protection Claim</u>:  Utah's Consumer Sales Practices Act ("UCSPA") bars two general types of acts. First, it prohibits actions constituting "deceptive act[s] or practice[s] by [a] supplier."  Utah Code §§ 13-11-4, 13-11-8(2) (2008); Utah Admin. Code § R152-11 (2008). Second, it prohibits acts that are deemed to be "unconscionable act[s] or practice[s] by [a] supplier." Utah Code § 13-11-5.  *See also Woodhaven Apts. v. Washington,* 942 P.2d 918, 924-25 (Utah 1997) (examining, in reviewing contract for unconscionability, factors such as whether terms were "deceptive or misleading," buried in contract, and whether contract was unjust); *Imperial Mobile Home Park LLC* v. *Kelsch,* No.971591-CA, 1998 Utah App. LEXIS 171, at *1, 1998 WL 1758393, at *1 (Utah Ct. App. Nov. 27, 1998) (stating, in reviewing whether acts were unconscionable, that such acts require gross bargaining power inequality or oppressive contractual terms).<br><br><u>Bars Consumer Class Actions</u>:  Utah Code § 13-11-19(4)(a) (2008) ("A consumer who suffers loss as a result of a violation … may bring a class action for the actual damages caused by an act or practice specified as violating this chapter by a rule adopted by the enforcing authority ... before the consumer transactions on which the action is based, or declared [unlawful] ... by a final judgment of the appropriate court or courts of general jurisdiction and appellate courts of this state that was either officially reported or made available for public dissemination ... by the enforcing authority ten days before the consumer transactions on which the action is based."). |
| **Vermont** | <u>Requires Fraudulent or Deceptive Conduct to Support a Consumer Protection Claim</u>:  Vermont's Consumer Fraud Act ("VCFA") provides that "[u]nfair methods of Competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."  Vt. Stat. Ann. tit. 9, § 2453(a) (2007).  Section 2453(b) further provides that "[i]t is the intent of the legislature that in construing subsection (a) of this section, the courts of this state will be guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States."  *Id*. § 2453(b).  *See Winey v. William E. Dailey, Inc.,* 636 A.2d 744, 748 (Vt. 1993) (stating that VCFA plaintiff must show defendant made "a representation likely to mislead her, that she interpreted it reasonably under the circumstances and that the misleading nature of the representation was likely to affect her conduct or decision with respect to the contract"). |

8

| **Appendix IV:  Authority Supporting Defendant's Arguments for Dismissal of Plaintiffs' State Consumer Protection Claims** | |
|---|---|
| **West Virginia** | <u>Requires Written Notice to Defendant Prior to the Filing of a Consumer Protection Claim</u>:  W. VA. Code § 46A-6-106(b) (2008) ("Notwithstanding the provisions of subsection (a) of this section, no action may be brought pursuant to the provisions of this section until the consumer has informed the seller or lessor in writing and by certified mail of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation to make a cure offer."). <br><br> <u>Does Not Provide a Cause of Action for Price Fixing Under Its Consumer Protection Law</u>:  The West Virginia Consumer Credit and Protection Act does not provide a cause of action for price fixing.  W. VA. Code § 46A-6-102(7) (2008).  *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 516 F. Supp. 2d 1072 (N.D. Cal. 2007).  In *DRAM,* this Court observed that the 16 descriptions of "unfair methods of competition" in the West Virginia statute do not target traditional antitrust conduct and instead focus on "conduct that, in one way or another, 'creates a likelihood of confusion or misunderstanding' with respect to goods, services or businesses, or involves deceptive, false, or misleading statements and representations in connection with goods, services or businesses." *Id.* at 1118. |

9