1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Timothy L. O'Mara (Bar No. 212731)
3  505 Montgomery Street, Suite 2000
   San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
4  Facsimile:  (415) 395-8095
   Email:  Dan.Wall@lw.com
5  Email:  Tim.OMara@lw.com

6

   Attorneys for Defendant
7  ELECTRONIC ARTS INC.

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12  GEOFFREY PECOVER and JEFFREY         CASE NO. C 08-02820 VRW
    LAWRENCE, on Behalf of Themselves and
13  All Others Similarly Situated,       Complaint filed:  June 5, 2008

14                                       **JOINT CASE MANAGEMENT**
           Plaintiffs,                   **STATEMENT AND RULE 26(f)**
15                                       **REPORT**
        v.
16
                                         Date:      September 11, 2008
17  ELECTRONIC ARTS INC., a Delaware     Time:      3:30 p.m.
    Corporation                          Place:     Courtroom 6, 17th Floor
18                                       Judge:     The Honorable Vaughn R. Walker

19              Defendant.

20

21

22

23

24

25

26

27

28

1    Pursuant to Local Civil Rule 16-9, Plaintiffs and Defendant Electronic Arts Inc.

2  (collectively, the "Parties") jointly submit the following case management statement and Rule

3  26(f) Report.  Nothing stated herein shall be deemed an admission by either Party, and this

4  Report shall not be admissible in any subsequent hearing or trial in this or any other litigation.

5    **1. Jurisdiction and Service**: The Court has subject matter jurisdiction over Plaintiffs'

6  federal antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction

7  over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  This Court also has diversity

8  jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  Defendant has been served with

9  process and has appeared.  No party contests personal jurisdiction or venue in this Court.

10    **2(a). Plaintiffs' Statement of Facts.**

11    Electronic Arts historically dominated the market for interactive football software

12  by producing a superior product.  That changed in 2004 when Take Two Interactive, Inc., one of

13  the largest makers of interactive software in the world, released NFL 2K5 to rave reviews.  The

14  Official Xbox Magazine gave it its Editors' Choice award and deemed it "the best NFL title on

15  the Xbox."  GamePro.com and IGN.com, both highly influential websites covering the football

16  interactive software market, similarly gave NFL 2K5 Editors' Choice awards.  NFL 2K5

17  combined award-winning gameplay with ground breaking prices.  Despite NFL 2K5's superior

18  quality, Take Two priced the game at $19.95 nearly *thirty dollars* below the Madden NFL title

19  which then sold at $49.95.  Faced with a serious competitor for the first time, Electronic Arts was

20  forced to lower its prices to $29.95.  This vigorous competition benefited consumers.  Electronic

21  Arts could have continued to compete by offering a lower price and/or a higher quality product.

22  Instead, Electronic Arts quickly entered into a series of exclusive agreements with the only

23  viable sports football associations and leagues in the United States:  the National Football

24  League ("NFL"), the NFL Players Association, the Arena Football League ("AFL") and NCAA

25  Football.  Although in its recently filed motion to dismiss, Electronic Arts attempts to ignore the

26  series of agreements and act as if there was only one agreement with the NFL that the NFL

27  forced it to sign, the fact is that the NCAA and Arena Football franchises are not insignificant

28  from a competitive perspective.  Plaintiffs expect to show, for example, that Electronic Arts sells,

1    or has sold in the past, over one million copies of NCAA football in a single year – hardly

2    insignificant from a competitive standpoint.

3              As a direct result of this series of anticompetitive agreements, Electronic Arts

4    killed off all competition in the market for interactive football software.  Lacking competition,

5    Electronic Arts raised its prices dramatically.  Specifically, Electronic Arts immediately raised

6    the price of the Madden 2006 videogame (released in August of 2005) nearly seventy percent to

7    $49.95 and now sells interactive football software for up to $59.95.  Electronic Arts' price

8    increase is significant for two reasons.  *First*, there is no need for this Court to speculate about

9    whether consumer harm has occurred.  It has.  Madden NFL and other interactive football

10   software is now listed at *three times* price of NFL 2k5.  *Second*, the ability of Electronic Arts to

11   dramatically raise the prices of its interactive football software from $29.95 to $59.95 *without*

12   *losing any customers* is strong evidence that interactive football software constitutes a relevant

13   market.

14           **2(b).  Defendant's Statement of Facts.**

15              Electronic Arts Inc. ("EA"), headquartered in Redwood City, is one of the leading

16   developers and publishers of videogames.  EA is accused of monopolizing an alleged market for

17   interactive football software because it bid on and was awarded the exclusive rights to make

18   videogames using the trademarks and other intellectual property rights of the National Football

19   League ("NFL") and its Players' Association, the Arena Football League ("AFL"), and the

20   National Collegiate Athletic Association ("NCAA").  That is all EA is accused of.  The conduct

21   alleged in the Complaint is strikingly simple:

22         ▪    In December 2004, EA entered into an exclusive agreement with the NFL and its
              Players Association.

23         ▪    In January 2005, EA entered into an exclusive agreement with the AFL.

24         ▪    In April 2005, EA entered into an exclusive agreement with the NCAA, through its
              licensing arm.

25

26              The antitrust theory of the Complaint is that EA "killed off" its only football

27   competition by entering into the NFL exclusive (the NFL being "[b]y far the most important

28   football league from the perspective of interactive football software makers"), and then raised

1    entry barriers by also acquiring the AFL and NCAA licenses.  This, allegedly, allowed EA to raise

2    the price of its NFL video game, *Madden NFL*, above competitive levels.

3              The two Plaintiffs and proposed class representatives are indirect purchasers of

4    *Madden NFL*.  The proposed class is defined to exclude direct purchasers such as Best Buy and

5    Gamestop, the retailers from which Plaintiffs bought *Madden NFL*.  Despite their indirect

6    purchaser status, Plaintiffs advance a claim of monopolization under Section 2 of the Sherman

7    Act, 15 U.S.C. § 2.  This is followed by twenty state antitrust claims, twenty state consumer

8    protection and unfair competition claims, and a common law claim of unjust enrichment.

9              Plaintiffs' case is fatally flawed on multiple levels, not the least of which is that

10   Plaintiffs' alleged market of "interactive football software" is untenable.  Plaintiffs' Complaint is

11   premised on the theory that the NCAA and AFL branded football games are uniquely close

12   substitutes to *Madden NFL*, such that no other video game—sports or otherwise—is capable of

13   providing a significant competitive restraint on the pricing of *Madden NFL*.  Stated differently,

14   the Plaintiffs' Complaint, as alleged, must fail unless Plaintiffs allege and ultimately prove that

15   the relevant market is no broader than "league licensed football games."

16             Plaintiffs, however, have not alleged any facts that reveal the basis for believing

17   that such a product market comprises the full range of video games that consumers view to be

18   good substitutes or reasonably interchangeable.  To the contrary, Plaintiffs merely assert that

19   consumers demand video games that allow them to identify with "real life teams and/or players."

20   Compl. ¶15.  That justification has no specific application to football games, as the market is

21   replete with popular sports games bearing the logos and likeness of actual teams and players,

22   such as soccer, basketball, golf, tennis, hockey, boxing, racing, baseball, etc.  At best, Plaintiffs

23   seem to state that sports league branded video games are a market unto themselves, separate

24   from non-branded simulation or arcade sports games.[1]  In other words, the Plaintiffs' allegation

25   _____

26   [1]    Assuming Plaintiffs' allegations are true that there is "essentially no demand and therefore no
         market for" non-league branded football video games, Compl. ¶15, that would seemingly
27       exclude from the market several non-branded professional football games that have entered
         the market since 2005, including Take-Two's All-Pro football (which substantially outsold

28

1    that consumers demand "real life teams and/or players" implies a much broader market of

2    interactive league-licensed sports games, within which the Plaintiffs' claim of monopolization is

3    utterly untenable.

4           If, on the other hand, the Plaintiffs mean to assert a relevant market limited to

5    "league-branded interactive football games," then they must, at a minimum, prove that a

6    substantial majority of *Madden NFL* consumers have a football-specific demand that outweighs

7    their demand for other (more popular) sports and non-sports games that are launched in roughly

8    the same time frame.  To support such a product market, Plaintiffs will have to show that AFL

9    games (which have generated only trivial sales in comparison) are a meaningful and unique

10   constraint on *Madden NFL*, despite the fact that the AFL season—and the launch of AFL-

11   branded video games—begins six months after the start of the NFL season.  As such, Plaintiffs

12   would need to support the proposition that consumers who buy *Madden NFL* in August through

13   December (which comprises the substantial majority of *Madden NFL* sales) view an AFL-

14   branded football game to be the next closest substitute, despite the fact that it will not be released

15   for several more months—a notion that strains the boundaries of credibility.

16          Similarly, Plaintiffs must show that NCAA-branded football games are targeted at

17   the same audience as *Madden NFL*, and that consumers of the two games regard the games to be

18   closer substitutes to one another than any other video game offered on the market (i.e., if EA

19   raised the price on *Madden NFL*, those consumers would divert to an NCAA or AFL branded

20   game, rather than any of the other premium games that outsell both by an order of magnitude).

21   Once again, such a market definition is not tenable, much less plausible.

22          The gerrymandered market aside, the Complaint is facially deficient for two

23   reasons that require dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) .  First, the

24   federal antitrust claim is clearly barred by the *Illinois Brick* doctrine.  With few exceptions, only

25   direct purchasers may bring federal antitrust claims, and Plaintiffs plead no facts that come close

26

27   EA's AFL game) and the highly publicized new releases of Midway (Blitz II) and Techmo
     (Techmo Bowl 2008).

28

1    to any exception.  Second, it is not illegal—under any theory—for EA to bid on exclusive licenses

2    that intellectual property owners choose to offer.  Exclusive intellectual property licenses are

3    commonplace, and widely accepted in commerce and under the law as one legitimate way for an

4    intellectual property rights holder to maximize the value of its property.  Highly analogous case

5    law holds that a sports league—in particular, the NFL—has the right to enter into exclusive rights

6    agreements, and potential licensees have a right to bid on such licenses.  *See American Needle,*

7    *Inc. v. NFL*, No. 07-4006, 2008 U.S. App. LEXIS 17553, 2008 WL 3822782 (7th Cir. Aug. 18,

8    2008) (dismissing antitrust claims against the NFL and its exclusive apparel licensee, Reebok).

9    Under this authority, it is clear that the NFL-EA agreement is perfectly lawful.

10          It makes no difference that EA also bid on and obtained exclusives from the AFL

11   and NCAA.  Plaintiffs do not put much weight on these licenses, conceding that the NFL license

12   is much more significant commercially.  Regardless, those leagues also had legal rights to license

13   exclusively, and EA had a right to compete for those licenses.  Antitrust law does not limit EA's

14   pursuit of the license rights that sports leagues and others offer videogame developers.  It is

15   distinctly anticompetitive for Plaintiffs to suggest otherwise, as any such rule would deny the

16   licensors the benefits of bidding competition.  These fatal flaws are addressed in detail in EA's

17   Motion To Dismiss Class Action Complaint, filed on August 25, 2008 and set for hearing on

18   December 4, 2008.

19          Against this background, the principal factual issues that will need to be

20   addressed in this matter, include the following:

21       ▪  Whether "interactive football software" is the relevant market;

22       ▪  Whether EA has market power in the relevant market;

23       ▪  Whether EA's acquisition of the NCAA or AFL licenses substantially
24          enhanced EA's market power in the relevant market, e.g., whether the alleged
             harm to *Madden NFL* consumers can be attributed solely to the NCAA or
25          AFL licenses;

26       ▪  The extent to which EA's market position is due to competition on the merits,
            *e.g.,* the lawful acquisition of exclusive IP licensing rights;

27       ▪  The extent to which EA's market position is due to the significant investment
28          that it has made in developing the interactive video game software at issue;

- Whether the actions of EA have injured Plaintiffs;

- Whether the actions of EA have caused harm to competition in a relevant market;

- Whether Plaintiffs have suffered damages as a result of EA's conduct and, if so, the nature and extent of those damages;

- Whether Plaintiffs mitigated their alleged damages;

- Whether EA entered into any unlawful agreement to restrain trade;

- Whether class certification is appropriate; and

- Whether Plaintiffs are appropriate class representatives.

**3(a).  Plaintiffs' Statement of Legal Issues.**

1.  Whether plaintiffs correctly defined the relevant market particularly in light of overwhelming empirical evidence that Electronic Arts has the ability to raise prices for interactive football software significantly for an extended period of time without losing customers.

2.  Whether intellectual property laws permit Electronic Arts to sign a series of exclusive agreements with numerous separate entities in order to completely foreclose the market for interactive football software despite the facts that (a) in its recently filed motion to dismiss, Electronic Arts does not even try to hypothesize any pro-consumer justification for its exclusive agreements; (b) empirical evidence demonstrates severe consumer harm; (c) Electronic Arts is the licensee not the intellectual property holder; (d) courts have repeatedly recognized that "intellectual property rights do not confer a privilege to violate the antitrust laws."  *See United States v. Microsoft Corp.,* 253 F.3d 34, 63 (D.C. Cir. 2001).

3.  Whether application of a California law to a California corporation violates that corporation's due process rights.

4.  Whether indirect purchasers have standing to sue under California law.

5.  Whether plaintiffs properly asserted a claim for unjust enrichment.

**3(b).  Defendant's Statement of Legal Issues.**

1.  Whether Plaintiffs' Sherman Act § 2 claim is barred by the *Illinois Brick* doctrine, which prohibits indirect purchasers from recovering overcharges premised on the anticompetitive conduct of manufacturers or remote sellers;

2.  Whether it was an unlawful act of monopolization (under state or federal law) for EA to acquire exclusive licenses of intellectual property rights from three football leagues;

3.  Whether EA entered into any unlawful agreements to restrain trade in violation of California's Cartwright Act, and whether parties to an exclusive license who are not competitors are legally capable of "conspiring" in violation of the antitrust laws;

4.  Whether Plaintiffs lack standing to maintain state antitrust claims under the laws of the eighteen states where none of the Plaintiffs reside; and whether Plaintiffs have stated a claim under any such statutes;

5.  Whether Plaintiffs have stated a claim under the consumer protection statutes of California and the District of Columbia;

6.  Whether Plaintiffs lack standing to maintain state consumer protection claims under the laws of the eighteen states where none of the Plaintiffs reside; and whether Plaintiffs have stated a claim under any such statutes;

7.  Whether  Plaintiffs' attempt to bring an action on behalf of a nationwide class under California law fails the Supreme Court's *Shutts* test; and

8.  Whether Plaintiffs' Fourth Cause of Action for unjust enrichment is improper under California law.

**4.  Motions**:  Defendant has filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which will be heard by the Court on December 4, 2008.  No other motions are currently pending.  Should the case survive this challenge, Plaintiff anticipates filing a motion for class certification; Defendant will oppose class certification; and the Parties anticipate filing dispositive motions following the completion of discovery.

**5. Amendment of Pleadings**:  At this time, the Parties do not anticipate that the pleadings will be amended, except that Plaintiffs reserve the right to amend to add additional named plaintiffs and state specific allegations in the event the Court does not certify a nationwide class under California law.

**6. Evidence Preservation**:  The Parties have distributed hold orders to relevant persons/personnel and intend to continue to monitor compliance therewith.

**7. Disclosures**:  The Parties anticipate that initial disclosures required by Federal Rule of Civil Procedure 26 will be completed by September 4, 2008.

**8. Discovery**:  No discovery has been taken to date in this action. The Parties anticipate taking written and oral discovery from each other as well as from relevant non-party IP licensors, video game retailers, video game developers, and customers regarding the facts alleged in the pleadings.

**9. Class Actions**:  Plaintiffs intend to move for class certification as early as practicable. Plaintiffs intend to propound discovery relevant to class certification and intends to file within 30 days of the close of fact discovery.  Defendant does not believe this case is appropriate for class certification.

**10. Related Cases**:  None.

**11. Relief**:  Plaintiffs seek all relief available under the law including but not limited to (a) damages, (b) disgorgement of profits, (c) restitution, (d) treble damages or other statutory damages, (e) punitive damages, (f) pre- and post-judgment interest, (g) attorneys fees and costs, and (h) appropriate injunctive and/or declaratory relief.

**12. Settlement and ADR**: The parties do not believe that alternative dispute resolution is appropriate at this time.

**13. Consent to Magistrate Judge For All Purposes**: The Parties do not consent to having a magistrate judge conduct all further proceedings.

**14. Other References**:  The Parties do not believe this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**:  The Parties have not identified any issues that can currently be narrowed by agreement.  Defendant believes the Complaint should be dismissed pursuant to its pending Fed. R. Civ. P. 12(b)(6) motion.

**16. Expedited Schedule**:  At this time the Parties do not believe that an expedited schedule is appropriate. The Parties' proposed schedule is stated below.

**17. Scheduling**:  Plaintiffs believe that discovery should commence in accord with the Federal Rules of Civil Procedure on September 4, 2008, the due date for the exchange of the Rule 26 initial disclosures.  Defendant believes that discovery should not commence until the pending Fed. R. Civ. P. 12(b)(6) motion has been heard and ruled on.  With the exception of this scheduling disagreement, the Parties jointly propose the following pre-trial schedule:

| | |
|---|---|
| Defendant's 12(b)(6) Motion | December 4, 2008 |
| Fact discovery closes | September 1, 2009 |
| Motion for Class Certification | October 1, 2009 |
| Opposition to Class Certification | November 15, 2009 |
| Reply in Support of Class Certification | December 15, 2009 |
| Exchange of expert reports | January 15, 2009 |
| Exchange of reply expert reports | March 15, 2010 |
| Expert discovery closes | April 15, 2010 |
| Dispositive motions due | August 1, 2010 |
| Response to dispositive motions | September 1, 2010 |
| Reply in support of dispositive motions | September 21, 2010 |
| Pretrial conference | At the discretion of the Court |
| Trial | At the discretion of the Court |

**18. Trial**:  The Parties have requested a jury trial that is expected to last approximately two weeks.

**19. Disclosure of Non-Party Interested Entities or Persons**:  The Parties have filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-16.

1           Plaintiffs stated: Plaintiffs are not corporate parties and are not required to file

2    Disclosure Statements under Federal Rule of Civil Procedure 7.1.

3           Defendants stated: "Pursuant to Federal Rule of Civil Procedure 7.1, defendant

4    Electronic Arts Inc. hereby discloses that it has no parent corporation, and that no public

5    company owns more than ten percent of its stock.  Pursuant to Civil Local Rule 3-16, defendant

6    Electronic Arts Inc. certifies that the following persons, associations of persons, firms,

7    partnerships, corporations or other entities have a financial interest in the subject matter of this

8    litigation, as defined by 28 U.S.C. § 455(d)(4):  1.   Electronic Arts Inc. has a number of direct

9    and indirect subsidiaries."

10        **20.  Other Matters**:  The Parties are not aware of any other matters that would facilitate

11    the just, speedy and inexpensive disposition of this matter.

12

13    Dated:  September 4, 2008            Respectfully Submitted,

14                          LATHAM & WATKINS LLP

15                            Daniel M. Wall
                        Timothy L. O'Mara

16

17                          By _____ /s/ Timothy L. O'Mara _____
                        Timothy L. O'Mara

18                            Attorneys for Defendant
                        ELECTRONIC ARTS, INC.

19

20    Dated:  September 4, 2008            Respectfully Submitted,

21                          HAGENS BERMAN SOBOL SHAPIRO LLP
                        Shana Scarlett

22

23                          THE PAYNTER LAW FIRM PLLC
                        Stuart M. Paynter

24                          By _____ /s/ Shana Scarlett _____

25                          Shana Scarlett
                      Attorneys for Plaintiffs

26                          G. PECOVER and J. LAWRENCE.

27

28

1

2

## ELECTRONIC CASE FILING ATTESTATION
### (General Order No. 45(X)(B))

3

4

5

6

      I, Timothy L. O'Mara, am the ECF User whose identification and password are being used to file this Joint Case Management Conference Statement pursuant to Civil Local Rule 16-9.  In compliance with General Order No. 45 (X)(B), I hereby attest that the concurrence in the filing of this document has been obtained from Shana Scarlett.

7

8

Dated:  September 4, 2008

9

10

11

Respectfully submitted,

LATHAM & WATKINS LLP
    Daniel M. Wall
    Timothy L. O'Mara

12

13

By       /s/ Timothy L. O'Mara
    Timothy L. O'Mara
    Attorneys for Defendant
    ELECTRONIC ARTS, INC.

14

15

SF\669179

16

17

18

19

20

21

22

23

24

25

26

27

28