# THE PAYNTER LAW FIRM, PLLC
1200 G Street N.W. ♦ SUITE 800 ♦ WASHINGTON, D.C. ♦ 20005

April 22, 2010

The Honorable Vaughn R. Walker
United States District Court
Northern District, San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Pecover v. Electronic Arts, Inc.,* No. 08cv02820 VRW

Dear Chief Judge Walker:

      Although Plaintiffs have received the clerk's notice vacating the hearing, it is important to respond to the mischaracterizations by Defendant prior to the Court re-scheduling the hearing date.

      Electronic Arts' request to improperly introduce additional "surreply" expert testimony in response to Professor Mackie-Mason's reply report comes as no surprise to Plaintiffs.  EA's strategy of serial attacks on plaintiffs' economic experts at class certification comes straight from the antitrust defendants' playbook *du jour*.

      So, while certainly not novel, EA's inability to hide its game plan is somewhat unique. At his deposition, EA's expert witness, Professor Ordover let slip that EA intended to introduce additional expert testimony if Plaintiffs submitted a reply report *even before it had seen the Mackie-Mason reply report*:  "I understand at some point I may even be allowed to file another report on the subject of class certification if there is, for example, a [reply] report from MacKie-Mason."  Ordover; 113:12 to 113:17.  Thus forewarned, every paragraph Mackie-Mason's reply report directly responded to the Ordover report.  Indeed, each main section of Mackie-Mason reply report directs the Court to the corresponding paragraphs of Ordover's report to which it directly responds.  Despite this, EA hewed to its original plan and now requests leave to submit additional "surreply" expert testimony through an evidentiary hearing or, in the alternative, through additional briefing.  As discussed below, EA's request is meritless, and this Court need not schedule a telephonic conference call to address what is essentially a non-issue.

**Mackie-Mason's Reply Report Directly Responds to Ordover's Report**

      As the party seeking to introduce surreply evidence, EA bears the burden of identifying the portions of Mackie-Mason's reply report that it believes present "new" evidence.  Of the 184 paragraphs of the Mackie-Mason reply report, EA identifies only 17 paragraphs that contain "new" analysis.  *See* 4-21-10 Letter from Daniel M. Wall to the Court ("4-21-10 Letter"), at 2 (citing paragraphs 26-38, 92, 96-98 & 121).  Even the most cursory review demonstrates that every single one of these paragraphs is directly responsive to the Ordover report:

      ¶¶ 26-35.  These paragraphs directly respond to Ordover's claim that Plaintiffs' market definition is implausible because EA's football software competes with all other premium

STUART M. PAYNTER        Tel. (202) 626-4486
California Bar No.: 226147        Fax. (866) 734-0622
District of Columbia: Bar No.: 486616        Email: stuart@smplegal.com

THE PAYNTER LAW FIRM, PLLC
1200 G Street N.W. ♦ SUITE 800 ♦ WASHINGTON, D.C. ♦ 20005

games. Ordover ¶¶ 29-37. Plaintiffs have consistently maintained that EA's attempt to introduce half-baked market definition analysis at the class certification stage is inappropriate. Once EA chose to do so in Ordover's report, Plaintiffs were certainly entitled to respond. In any case, EA has *already* submitted additional briefing on this issue in its response to Plaintiffs' motion to strike the testimony of Jill Hamburger, which it filed long after the submission of the Mackie-Mason reply brief. *See* EA Hamburger Opp.[1], at 10-11.

¶¶ 36-38. These two paragraphs directly respond to Professor Ordover's assertion that the relevant IP licensors would have signed exclusive licenses anyway in the but-for-world. Ordover ¶¶ 9, 38-56. Again, Plaintiffs have consistently taken the position that this is a question for the merits, but once EA raised the issue Plaintiffs were entitled to respond by explaining the flaws in Ordover's woefully incomplete analysis. EA should not now be allow to go back and fix the glaring errors in Ordover's analysis, such as his apparent unawareness that the NFL and NFLPA are separate licensors possessing independent authority over intellectual property in the marketplace.

¶ 92. This paragraph directly responds Ordover's statement that Madden purchasers "are unlikely to be price sensitive." Ordover ¶ 83. It contains no new calculations; rather it simply cites to EA's own price-sensitivity studies that directly refute Order's assertion. Obviously these documents have long been in EA's possession. It then states that the "level of price sensitivity" these documents indicate "suggests that it is very likely EA would have found it more profitable to lower its price in the but-for world." This is the sentence quoted blatantly out of context by EA to suggest that the Mackie-Mason reply report introduces "new" evidence. This sentence clearly responds directly to Ordover ¶ 83. In addition, EA has already submitted additional briefing on this issue in its response to Plaintiffs' motion to exclude Jill Hamburger's testimony. *See* EA Hamburger Opp., at 9-10.

¶¶96-98: In his opening declaration, Mackie-Mason proposed three plausible methods by which damages could be measured on a class wide basis. In response, Ordover contested these methods, while at the same time he actually used one of the benchmarks suggested by Mackie-Mason to argue against the existence of common injury – an exercise to be performed at trial instead of at the class certification stage. He purported to conduct an actual damages analysis, which he claimed demonstrated that "many" class members suffered no injury at all. Ordover ¶¶ 104-107. In reality, Ordover's damages analysis is nothing more than unscientific off-the-cuff arithmetic. Paragraphs 96-98 respond directly to those calculations. Specifically in these three paragraphs, Mackie-Mason "duplicate[ed]" Ordover's "unscientific method using two other benchmarks," which show that all class members were harmed. But this hardly represents "new" evidence. Not only is it directly responsive but Mackie-Mason explicitly states in Paragraph 97 that his calculations "are subject to the same criticisms" he levied at Ordover and therefore are *not* presented "for the truth of the matter, but rather to demonstrate that Ordover has failed to prove that there is not common, positive harm for nearly all class members."

---

[1] EA Hamburger Opp. refers to Electronic Arts' Opposition to Plaintiffs Motion to Exclude the Expert Opinion of Jill Hamburger and Strike Section II.B of Defendant's Opposition to Plaintiffs' Motion for Class Certification (filed Apr. 15, 2010, UNDER SEAL).

# THE PAYNTER LAW FIRM, PLLC
1200 G Street N.W. ♦ SUITE 800 ♦ WASHINGTON, D.C. ♦ 20005

---

¶ 121:   Paragraph 121 responds directly to the assertions by EA's experts, Ordover and Hamburger, that Take-Two would have raised its prices even absent its anticompetitive conduct. This again goes to merits.  In any case, this issue has also been exhaustively briefed in connection with the motion to exclude Hamburger's testimony and therefore EA has had ample opportunity to address it.  *See* EA Hamburger Opp. at 14-16.

Notably, despite its representations to the contrary, not one of paragraphs cited by EA really has anything to do with "an analysis of common impact on direct purchasers," the purportedly "new" issue that Plaintiffs' supposedly raised.   4-22-10 Letter at 2.  This is because EA's claim that Plaintiffs have failed to analyze "common impact on direct purchasers" is not true.  Mackie-Mason's opening report has an entire section entitled "Impact on direct purchasers was common."  Mackie-Mason Opening Decl. 66-82.  Thus Plaintiffs did not "abdicate" this "first step in the analysis" as EA claims.  EA's real argument is that the majority of class members would not have been injured because, despite enormous market-share gains, Take-Two would nevertheless have decided to triple its prices to $59.95—which of course just happens to be the monopoly price at which EA now sells its football software.  That wholly implausible argument has nothing to do with class certification.  EA knows this and so it attempts to portray what is clearly a merits argument as something related to "common impact" on direct purchasers.

## **EA Has Shown No Other Basis For an Evidentiary Hearing.**

Evidentiary hearings are not a "frequent practice" in antitrust actions as EA suggests.  In fact, Judge Fogel recently denied a similar request in the *eBay* litigation holding that given the "substantial record" there was "no need to receive cumulative live testimony."  *In re eBay Seller Antitrust Litig*., 2009 U.S. Dist. LEXIS 85881 (N.D. Cal. Sept. 1, 2009).  Similarly, here, the class certification record already consists of over 6,700 pages of briefing and exhibits and no need exists to expand this substantial record by additional live testimony.  Moreover, while EA may have limitless resources to pay for cumulative testimony, the putative class should not have to bear the needless expenditure of resources.  Because EA has not shown that Plaintiffs have introduced any new evidence and because the record in this case is more than sufficient for this Court to determine whether certification is proper, EA's request should be denied.

\*     \*     \*

# THE PAYNTER LAW FIRM, PLLC
1200 G Street N.W. ♦ SUITE 800 ♦ WASHINGTON, D.C. ♦ 20005

---

      As discussed above, EA's request for an evidentiary hearing is meritless.  However, in the event that the Court does order an evidentiary hearing, Plaintiffs should not be limited to calling Professor Ordover.  EA has introduced fact declarations from numerous individuals and another "expert" Jill Hamburger.  Consequently, Plaintiffs reserve the right to call all these individuals as witnesses at any evidentiary hearing.  In addition, the testimony of EA's head of IP is clearly relevant to class certification as outlined in Plaintiffs' motion for an adverse inference on choice of law.  If there will be an evidentiary hearing in any event, Plaintiffs should be allowed to cross examine him in open court under oath, particularly since EA has taken the wholly meritless position that Plaintiffs' motion is "frivolous."  Consequently, if the Court decides to entertain EA's request, the Court should require EA to confirm on the record that it will make the following individuals available at any evidentiary hearing:  Professor Ordover, Michael Drucker, Paul Eibler, Gary Gertzog, Joel Linzner, Jill Hamburger and Jacob Schatz.

Sincerely

/s/ Stuart M. Paynter

Stuart M. Paynter